Filed 4/29/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| COUNTY OF TULARE, | F063555 |
| Plaintiff and Respondent, | (Super. Ct. No. 10-239660) |
| v. | |
| JEFFREY LEE NUNES, JR. et al., | **OPINION** |
| Defendants and Appellants. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County. Paul A. Vortmann, Judge.

William A. Romaine for Defendants and Appellants.

Kathleen Bales-Lange, County Counsel, Teresa M. Saucedo, Chief Deputy County Counsel, Julia C. Langley, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

By local zoning ordinance, the County of Tulare (the County) restricted the location of medical marijuana collectives and cooperatives (MMC's) to commercial and manufacturing zones. In violation of that ordinance, Jeffrey Nunes, Jr., and Foothill Growers Association, Inc. (Defendants), operated an MMC in an agricultural zone. The County brought an action for injunctive relief seeking to require Defendants to

discontinue the nonconforming use of the property. The trial court granted the County's motion for summary judgment and issued an injunction prohibiting Defendants from operating an MMC at that location in violation of the zoning ordinance. Defendants appeal. They argue the zoning ordinance is invalid because it conflicts with the state's general law and that it is unconstitutional. Defendants are mistaken. The zoning ordinance is a reasonable exercise of the County's power to enact local legislation (Cal. Const., art. XI, § 7), and Defendants have failed to show any conflict with state law or constitutional principle. We affirm the judgment.

## *FACTUAL AND PROCEDURAL HISTORIES*

We begin with the County's zoning ordinance in question. Section 15.3[1] of Ordinance No. 352 (the County's main ordinance relating to zoning) limits the permissible locations of MMC's to certain zones in the County. Section 15.3 provides that MMC's "shall not be established or located in any zone in the County of Tulare, nor shall any building or land be used for such collectives or cooperatives, other than those located in a C-2 (General Commercial), C-3 (Service Commercial), M-1 (Light Manufacturing), or M-2 (Heavy Manufacturing) zone district." It also prohibits MMC's from being located within 1,000 feet of certain incompatible uses, such as schools, daycare facilities, places of religious worship, public parks, or other MMC's. In adopting Section 15.3, the County stated its findings and concerns regarding the potential adverse effects of MMC's on public health, safety and general welfare, including risks of increased crime, decreased property values, and deterioration of neighborhoods. The provision was clearly an effort by the County to mitigate these adverse effects.

---

[1]The current version of section 15.3 was adopted in 2009. (We refer to this provision as Section 15.3 or Section 15.3 of the zoning ordinance.) It further provides that "[f]acilities or uses that distribute medical marijuana to two or more patients within the unincorporated areas of the County of Tulare shall be unlawful unless they are [MMC's]." A prior version of Section 15.3 addressed only the zoning of medical marijuana dispensaries.

2.

The County learned that Defendants were operating an MMC and/or a medical marijuana dispensary on land in an unincorporated area of the County that was zoned AE-20 (Agricultural 20-Acre Minimum). Defendants were asked to refrain from this prohibited use of the property, but they did not do so.

On October 14, 2010, the County filed a complaint against Defendants (and others who are not part of this appeal) seeking a preliminary and permanent injunction for "(1) Violation of Tulare County Zoning Ordinance; and (2) Maintaining a Public Nuisance." (Capitalization omitted.) The complaint alleged:

> "At all times relevant to … this complaint, the subject property has been and currently is zoned AE-20 (Agricultural 20-Acre Minimum). [¶] … Section 15.3 of the Zoning Ordinance requires [MMC's] to be established and located in C-2 (General Commercial), C-3 (Service Commercial), M-1 (Light Manufacturing), or M-2 (Heavy Manufacturing) zone districts. [¶] … Defendants have not applied for a variance or a change of zone for the non-conforming use of the subject property. [¶] … The current use of the subject property by defendants as set forth herein is unlawful and a violation of [S]ection 15.3 of the Zoning Ordinance. [¶] … [¶] … Defendants' use of the subject property … causes irreparable harm to property owners and residents of Tulare County in that such use of the property endangers the public health, safety and welfare, is contrary to the Zoning Ordinance, is destructive to the proper use of the land; and depreciates the value of real property in the County, particularly the real property of the defendants' neighbors."

Based on these facts, the complaint included a first cause of action for injunctive relief to prohibit the continued violation of the zoning ordinance, and a second cause of action to abate a public nuisance.[2] The complaint sought, in its prayer for relief, a declaration that Defendants were in violation of Section 15.3 of the zoning ordinance and an injunction ordering Defendants to "a. Close any and all business and other activities occurring at the subject property that are in violation of the Tulare County Zoning Ordinance; [¶] b. Cease and desist from using, conducting, allowing, permitting or

---

[2]Under section 19 of the zoning ordinance, a use that is contrary to provisions of the County's zoning ordinance is a public nuisance.

granting permission to use the subject property for the purpose of possessing, selling, serving, storing, keeping, cultivating, giving away, and/or distributing cannabis or marijuana at the subject property unless and until defendants obtain a zoning variance permitting the use of the subject property in the [AE-20] zone."

In May of 2011, the County moved for summary judgment on its complaint. The motion for summary judgment was made on the ground that, as a matter of law, Defendants' use of the property was a violation of Section 15.3 of the zoning ordinance and also, based on this violation, a public nuisance. The County asked the trial court to grant its motion and to issue the requested injunctive relief against Defendants. The County's separate statement of undisputed facts in support of its motion included as "undisputed material facts" the timeline of the County's adoption of Section 15.3 of the zoning ordinance, Defendants' nonconforming usage of the property in violation of Section 15.3, and their failure to apply for a variance or change of zone regarding this nonconforming use of the property.

In their opposition to the motion for summary judgment, Defendants submitted a separate statement that conceded the County's asserted undisputed facts. Defendants, however, submitted three additional "facts." They asserted that the property was not used for the commercial sale of marijuana, nor for a medical marijuana "dispensary," but merely for the "collective cultivation of medical marijuana by members of the Foothill Growers Association, Inc." In opposing the motion, Defendants primarily argued (as they do on appeal) that the ordinance was unenforceable since it was allegedly contrary to the general law of the state or was unconstitutional.

On August 9, 2011, following the hearing on the motion for summary judgment, the trial court adopted its tentative ruling as the order of the court. That ruling was to grant the County's motion. The trial court explained that the "[a]uthorities submitted by [the County] … show that [the County's] ordinances are constitutionally valid, and that there is no triable issue of fact or law .…" As a result, "[the County] [was] entitled to

4.

recover judgment against all Defendants" in "this injunctive relief action .…" The same day, the trial court issued its order granting the permanent injunction as requested in the County's complaint.

Defendants' timely notice of appeal followed.

## DISCUSSION

### I. Standard of review

On appeal following a trial court's grant of a summary judgment motion, we determine de novo whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.) In this appeal, Defendants do not contend that any material facts are in dispute; they raise only legal issues. In particular, Defendants challenge the validity of Section 15.3 of the zoning ordinance. Whether a local ordinance is unconstitutional or preempted by state statute is a question of law subject to our de novo review. (*County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 867.) Similarly, the interpretation and application of a statute is reviewed de novo. (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301; *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1322-1323.)

### II. Zoning ordinance does not conflict with general law

Defendants contend that Section 15.3 of the zoning ordinance is in conflict with the general statutory law of this state. To evaluate Defendants' argument, we begin with a brief overview of the relevant statutory provisions that address the subject of medical marijuana.

#### A. Statutory background

#### Compassionate Use Act

In 1996, California voters adopted Proposition 215, known as the Compassionate Use Act of 1996 (CUA) (Health & Saf. Code, § 11362.5).[3] The CUA stated that its

[3]All future statutory references are to the Health and Safety Code.

5.

intent was to "ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana"; "ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction"; and "encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (§ 11362.5, subd. (b)(1)(A)-(C).)

Despite this broadly worded statement of intent, the CUA's approach to the issue of medical marijuana was a relatively modest one: It provided immunity from prosecution for certain conduct that would otherwise be criminal. (*People v. Mower* (2002) 28 Cal.4th 457, 470; *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 774.) Section 11362.5, subdivision (d), states: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (See also subd. (c) [protecting physicians who recommend use].) As recognized by our Supreme Court, the CUA did not create "a broad right to use marijuana without hindrance or inconvenience." (*Ross v. RagingWire Telecommunications, Inc*. (2008) 42 Cal.4th 920, 928, 929 [CUA was "narrow exception to the criminal law"] (*Ross*).) "To the contrary, the only 'right' to obtain and use marijuana created by the [CUA] is the right of 'a patient, or … a patient's primary caregiver, [to] possess[] or cultivate[] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician' without thereby becoming subject to punishment under sections 11357 and 11358 of the Health and Safety Code." (*Id.* at p. 929; see also, *People v. Urziceanu*, *supra*, at p. 774 ["the

6.

[CUA] created a limited defense to crimes, not a constitutional right to obtain marijuana"].)

The CUA further stated: "Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes." (§ 11362.5, subd. (b)(2).)

*Medical Marijuana Program Act*

In 2003, the Legislature added the Medical Marijuana Program Act (MMPA) (§ 11362.7 et seq.) as article 2.5, division 10, chapter 6, of the Health and Safety Code. The Legislature passed the MMPA with several purposes in view, including facilitating prompt identification of qualified patients and caregivers in order to avoid unnecessary arrest and prosecution, promoting uniform and consistent application among the counties, and enhancing access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects. (Stats. 2003, ch. 875, § 1.) To accomplish these goals, the MMPA created a voluntary program for the issuance of identification cards to qualified patients and primary caregivers. The program would be implemented by each county. (§ 11362.71.)

In addition, "[a]s part of its effort to clarify and smooth implementation of the [CUA], the [MMPA] immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients." (*People v. Mentch* (2008) 45 Cal.4th 274, 290.) For example, section 11362.765[4] "accords qualified patients, primary caregivers, and holders of valid identification cards, an affirmative defense to certain enumerated penal sanctions that would otherwise apply to transporting, processing, administering, or giving away marijuana to qualified persons for medical use." (*City of*

---

[4]Section 11362.765, subdivision (a), states in part: "Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, on that sole basis, to criminal liability under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570."

*Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1171.) Similarly, section 11362.775 provides: "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." The MMPA also quantifies an amount of marijuana a qualified patient may ordinarily possess (§ 11362.77) and identifies places where patients may not engage in smoking of medical marijuana (§ 11362.79).

Section 11362.83 of the MMPA, prior to its recent amendment stated, "Nothing in this article shall prevent a city or other local governing body from adopting and enforcing laws consistent with this article." (Stats. 2003, ch. 875, § 2.) This provision has been construed to mean that the Legislature "expected and intended that local governments [would] adopt additional ordinances" to regulate medical marijuana operations through zoning, licensing, and other reasonable requirements. (*County of Los Angeles v. Hill, supra,* 192 Cal.App.4th at p. 868.) If there were any doubts that this was the case, recent legislative clarifications have removed them.

In 2010, the Legislature added section 11362.768 to the MMPA (Stats. 2010, ch. 603, § 1 [A.B. 2650]), which restricted the location of medical marijuana cooperatives, collectives, or dispensaries having a storefront or mobile retail outlet to locations more than 600 feet from schools. (§ 11362.768, subds. (b) & (e).) The same section also stated: "*Nothing in this section shall prohibit a city, county, or city and county from adopting ordinances or policies that further restrict the location or establishment of a medical marijuana cooperative, collective, dispensary*" (§ 11362.768, subd. (f), italics added); and "Nothing in this section shall preempt local ordinances, adopted prior to January 1, 2011, that regulate the location or establishment of a medical marijuana cooperative, collective, dispensary …." (*Id.*, subd. (g).) The wording of

8.

subdivisions (f) and (g) of section 11362.768 makes explicit that the restriction established by the statute (i.e., no medical marijuana dispensaries or MMC's within 600 feet of a school) was not intended to preempt local regulation or prohibit local governments from adopting more stringent restrictions. Thus, section 11362.768 reflects the Legislature's understanding that local governments already had, and would continue to have, the right to regulate or restrict the location and establishment of medical marijuana dispensaries and MMC's, absent a conflict with state law.

Moreover, in 2011, the Legislature amended section 11362.83 and, pursuant to that amendment, this section now states: "Nothing in this article shall prevent a city or other local governing body from adopting and enforcing any of the following: [¶] (a) *Adopting local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective*. [¶] (b) The civil and criminal enforcement of local ordinances described in subdivision (a). [¶] (c) Enacting other laws consistent with this article." (§ 11362.83, italics added; see Stats. 2011, ch. 196, § 1 [A.B. 1300], eff. Jan. 1, 2012.) Not only does section 11362.83, as amended, allow for local ordinances that regulate the location and establishment of medical marijuana dispensaries and MMC's, but it also applies broadly to the *entire* MMPA (i.e., "Nothing in *this article* [the MMPA] shall prevent"). (*Ibid.*, italics added.)

Although the amendment of section 11362.83 postdates the County's enactment of Section 15.3 and the trial court's order, it is relevant to whether Section 15.3 was in conflict with the MMPA because the new wording of the statute merely clarified existing law. Before the Legislature enacted the amendment to section 11362.83, two appellate courts had found—based in part on the former version of section 11362.83—that local zoning regulation of such land uses was permitted under the MMPA. (See *County of Los Angeles v. Hill, supra,* 192 Cal.App.4th at p. 867 ["[S]ection 11362.83 allows a county to regulate the establishment of [medical marijuana dispensaries] and their locations so long as those regulations are consistent with the provisions of [the MMPA]"]; and *City of*

9.

*Claremont v. Kruse, supra,* 177 Cal.App.4th at p. 1175 ["Nothing in the text or history of the [MMPA] precludes the City's adoption of a temporary moratorium on issuing permits and licenses to medical marijuana dispensaries, or the City's enforcement of licensing and zoning requirements applicable to such dispensaries"].) Of course, the Legislature is presumed to be aware of relevant appellate court decisions when it amends statutes. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155.) The legislative history of the amendment confirms the Legislature was mindful of these prior decisions.[5] For these reasons, and because the 2011 amendment to section 11362.83 is consistent with the above-mentioned appellate decisions construing that section, we conclude that the amendment was a legislative endorsement of those appellate decisions. As a result, the amendment amounted to a *clarification* of what the statute had allowed all along. (See *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 735 [addition of statutory language consistent with earlier case law construing statute amounts to legislative endorsement of that construction].)

Our conclusion that the amendment was a clarification of existing law is consistent with the fact that the Legislature retained the original language of section 11362.83, which became subdivision (c). As a result, the new wording in subdivisions (a) and (b) was not a change in the law, but a clarification or elaboration of it. This is further confirmed by the fact the Legislature had recently passed section 11362.768, which reflected the lawmakers' understanding that local governments could regulate medical marijuana dispensaries and MMC's.

### B. *Legal framework for analysis of Defendants' contentions*

Before we look at Defendants' contention that Section 15.3 of the zoning ordinance conflicted with the general statutory law, we first summarize the legal principles that apply when a local ordinance is challenged on this ground.

---

[5]See, regarding A.B. 1300, Assembly Committee on Public Safety, analysis of A.B. No. 1300 (2011-2012 Reg. Sess.) Apr. 26, 2011.)

Under article XI, section 7, of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Any conflicting ordinance "is preempted by state law and thus void." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1065 (*O'Connell*).)

"A conflict between state law and an ordinance exists if the ordinance duplicates or is coextensive therewith, is contradictory or inimical thereto, or enters an area either expressly or impliedly fully occupied by general law." (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251.) "A local ordinance *duplicates* state law when it is 'coextensive' with state law." (*O'Connell*, *supra*, 41 Cal.4th at p. 1067.) "A local ordinance *contradicts* state law when it is inimical to or cannot be reconciled with state law." (*Id.* at p. 1068.) "A local ordinance *enters a field fully occupied* by state law in either of two situations—when the Legislature 'expressly manifest[s]' its intent to occupy the legal area or when the Legislature 'impliedly' occupies the field. [Citations.]" (*Ibid.*; see also 8 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 986, p. 551 ["[W]here the Legislature has manifested an intention, expressly or by implication, wholly to occupy the field … municipal power [to regulate in that area] is lost"].)

"The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation]." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149.) Moreover, "when local government regulates in an area over which it traditionally has exercised control, such as the location of particular land uses, California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. [Citation.] The presumption against preemption accords with our more general understanding that 'it is not to be presumed that the [L]egislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is

11.

made clearly to appear either by express declaration or by necessary implication.' [Citations.]" (*Id.* at pp. 1149-1150.) The presumption against preemption applies to this appeal because land use and zoning regulation in California have "historically … been a function of local government under the grant of police power contained in article XI, section 7 of the California Constitution." (*Id*. at p. 1151.) "Thus, '[t]he power of cities and counties to zone land use in accordance with local conditions is well entrenched.' [Citation.] 'In enacting zoning ordinances, the municipality performs a legislative function, and every intendment is in favor of the validity of such ordinances.' [Citation.]" (*Id*. at p. 1152.)

### C. *Defendants' particular claims of statutory conflict*

Defendants do not claim that the Legislature intended to occupy the field concerning all regulation of MMC's or dispensaries. As our discussion of the CUA and MMPA demonstrated, this argument would fail because the Legislature clearly intended that cities and counties would enact local land use and zoning ordinances regarding MMC's and dispensaries. Nor are Defendants claiming that the zoning ordinance was coextensive with or duplicated state law. Rather, it appears that Defendants' position is that Section 15.3 of the zoning ordinance and related provisions were *contradictory* to provisions of the CUA or MMPA.

As we have mentioned, "[a] local ordinance *contradicts* state law when it is inimical to or cannot be reconciled with state law." (*O'Connell*, *supra*, 41 Cal.4th at p. 1068.) In this regard, Defendants' first argument is that, since Section 15.3 provides an actual *definition* of what constitutes a "Medical marijuana collective" and "Medical marijuana cooperative," it is contrary to the MMPA.[6] Defendants claim this is so

---

[6]Section 15.3 refers to the definitions provided in "Chapter 21, Part VI of the Ordinance Code." At section 6-21-1010 ("Definitions"), the term "Medical marijuana collective" is defined as "an entity, facility or location, at a fixed, immobile location, at which two (2) or more qualified patients, persons with an identification card, and the designated primary care givers of qualified patients and persons with an identification

because section 11362.775 of the MMPA does not give a specific definition of what it means to "associate … collectively or cooperatively to cultivate marijuana for medical purposes …." Defendants' argument is unpersuasive. The County's zoning ordinance was not inimical to section 11362.775, but gave the "collective" and "cooperative" concepts mentioned in that section reasonable specification and parameters. No contradiction or conflict with the MMPA is shown.

Contrary to Defendants' assumption, section 11362.775 does not establish a statutory "right" to collectively or cooperatively engage in the cultivation of medical marijuana at any location without hindrance or regulation, but merely sets forth certain immunities from criminal prosecution. As stated in *County of Los Angeles v. Hill, supra,*192 Cal.App.4th at pages 868-869: "The limited statutory immunity from prosecution … does not prevent the County from applying its nuisance laws to MMD's that do not comply with its valid ordinances.… The statute does not confer on qualified patients and their caregivers the unfettered right to cultivate or dispense marijuana anywhere they choose. The County's constitutional authority to regulate the particular manner and location in which a business may operate (Cal. Const., art. XI, § 7) is unaffected by section 11362.775."

Next, Defendants contend that a related provision in the Tulare County Ordinance Code (ch. 21, part VI, § 6-21-1040) would restrict the total number of marijuana plants in

card, combined, associate within the unincorporated area of the County of Tulare in order to jointly own and operate the business, facility or location and to collectively cultivate marijuana for medical purposes, as provided in … Section 11362.775 …." A "Medical marijuana cooperative," as defined in the same provision, is "an entity at a fixed, immobile location, properly organized, registered and operated as such a corporation pursuant to Corporations Code Section 12200 et seq. or Food and Agricultural Code Section 54001 et seq., as amended, so that qualified patients, persons with an identification card, and the designated primary caregivers of qualified patients and persons with an identification card may cultivate marijuana for medical purposes pursuant to … Section 11362.775 …."

any collective or cooperative cultivation to 99.[7]  It does not appear that the validity of that numerical limitation would make any difference to our disposition, since this case was (and is) based solely on the fact that, under Section 15.3 of the zoning ordinance, the AE-20 zoning of the land where Defendants' MMC was located did not permit operation of an MMC.  This case was not a challenge to all of the County's ordinances that may relate in any way to medical-marijuana-related land uses.  Rather, Defendants raised the issue of the purported conflict with state law as a defense to the County's lawsuit enforcing Section 15.3, a zoning restriction on the *location* of MMC's.

In any event, Defendants have failed to meet their burden of showing that a quantity limit of 99 plants per collective or cooperative would be inimical to the purposes of the CUA or the MMPA.  Since the CUA is narrow in scope, merely provides a defense to certain crimes (*Ross*, *supra*, 42 Cal.4th at pp. 928-929), and does not provide for collectives or cooperatives, Section 15.3's quantity limitation applicable to MMC's does not conflict with the CUA.  Defendants refer to section 11362.77 of the MMPA; however, that provision is not a guarantee but merely an outer limit on how much medical marijuana a qualified patient or caregiver may ordinarily possess without prosecution.  It provides a "safe harbor" amount for purposes of protecting against criminal prosecution.  (*People v. Kelly* (2010) 47 Cal.4th 1008, 1015, fn. 5 (*Kelly*).)[8]  Moreover, the ordinance provision is not an outright prohibition, but simply a limitation on quantity.  Defendants have failed to establish that the ordinance provision contradicts or is inimical to the CUA or MMPA.

---

[7]Although not part of the text of Section 15.3 of the zoning ordinance, there is a requirement in Section 15.3 that all MMC's comply with the regulations in chapter 21, part VI.

[8]As we will discuss, *Kelly, supra,* 47 Cal.4th at pages 1048-1049, held that the quantity limitations of section 11362.77 were invalid only insofar as they burdened *criminal* defenses provided under the CUA.

Finally, Defendants argue that, since one of the objectives of the MMPA was greater uniformity in applying the CUA in each county, the Legislature could not have intended that medical marijuana collectives, cooperatives, or dispensaries would be regulated or restricted by local zoning laws such as Section 15.3 of the zoning ordinance. We disagree. The Legislature has rejected that proposition in the recent amendments to the MMPA, which clarified that a city or other local governing body may "[a]dopt[] local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective." (§ 11362.83, subd. (a); see also, § 11362.768, subds. (f), (g).)

At oral argument, Defendants' counsel contended that these recent amendments to the MMPA were impermissible legislative revisions to the CUA, an initiative statute, and therefore invalid under *Kelly*, *supra*, 47 Cal.4th 1008. This contention lacks merit. In *Kelly*, the Supreme Court held that, to the extent section 11362.77's quantity limitation for marijuana possession and cultivation burdened a *criminal defense* available under the CUA (to possess or cultivate any amount of medical marijuana reasonably necessary for a patient's current medical condition based on the express recommendation of a physician), the section impermissibly amended the CUA in violation of the state Constitution. (*Kelly*, *supra*, at pp. 1043-1049.) In all other respects, however, section 11362.77 continued to "have legal significance" (*Kelly, supra,* at p. 1048), such as a "safe harbor" against prosecution (*id*. at p. 1015, fn. 5; see also, *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 713, fn. 3). The principles applied in *Kelly* relating to impermissible amendments of initiative measures have no bearing on this case because no substantive provision of the CUA was amended or altered by the recent amendments to the MMPA clarifying the role of local governments. (*Kelly*, *supra*, at pp. 1026-1027.) As we have stated, the CUA did not provide a broad right to possess or cultivate medical marijuana free from hindrance or local regulation, but merely furnished defenses to specified crimes. (*Ross*, *supra*, 42 Cal.4th at pp. 928-929.)

15.

Further, we are in full agreement with the analyses and conclusions of other Courts of Appeal that have held that local governing bodies may, under their traditional police powers, regulate medical marijuana land uses by means of local zoning ordinances and other regulations. (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534; *Browne v. County of Tehama*, *supra*, 213 Cal.App.4th at pp. 718-725; *County of Los Angeles v. Hill*, *supra*, 192 Cal.App.4th at pp. 867-871; *City of Claremont v. Kruse*, *supra*, 177 Cal.App.4th at pp. 1163-1176; *City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 425-433.)[9]

### III. *Zoning ordinance does not violate the equal protection clause*

Defendants argue that Section 15.3 of the zoning ordinance violates the equal protection clause of the California Constitution (see Cal. Const., art. I, § 7). This argument is unpersuasive.

"'"'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'"' [Citation.] "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.]'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) When a statutory classification is challenged on equal protection grounds, most legislation is reviewed only to determine whether the classification bears a rational relationship to a legitimate state interest. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200.) In areas of social or economic policy not involving suspect classifications or fundamental rights, the rational-basis test applies—that is, the statute must be upheld so long as "*there is any reasonably conceivable state of facts that could provide a rational basis for the classification.*

---

[9]In light of our conclusion, it is unnecessary to reach the County's alternative argument that Defendants' challenge to the validity of the zoning ordinance was barred by the statute of limitations.

16.

[Citations.]  Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.'"  (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482.)  "On rational-basis review, a classification in a statute ... comes to us bearing a strong presumption of validity, [citation], and those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it,' [citation]."  (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 314-315; accord, *Los Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 858-859.)

Defendants claim that Section 15.3 of the zoning ordinance treats MMC's unequally from individuals who grow medical marijuana.  While it is true that Section 15.3 singles out MMC's for special zoning restrictions (as to location), it does not appear that MMC's are similarly situated to individuals for purposes of the ordinance. Where a cooperative or collective enterprise is involved, it would necessarily involve a number of individuals associating, cooperating, or operating together.  As a result, there would be an increased likelihood of a higher concentration of plants in cultivation and/or a greater quantity of medical marijuana present in one place.  It would therefore be reasonable for the County to assume that MMC's would tend to increase the risk factors of such a land use above that of individual cultivation.

As mentioned earlier, Section 15.3 of the zoning ordinance included findings of potential adverse effects associated with MMC's, as did section 6-21-1000 (ch. 21, part VI).  The concerns expressed in the ordinance are not unreasonable.  We conclude that Defendants' equal protection challenge falls short because (1) the two classifications (MMC's and individuals) are not similarly situated, and (2) the different treatment of MMC's bears a rational relationship to legitimate government interests.

## IV.    *Defendants' remaining arguments fail*

Defendants suggest that the trial court erred because it did not find that operation of an MMC on the land was an "agricultural" use and therefore permissible in the AE-20 zone.  As the trial court stated, however, and as the County's brief reiterates, marijuana is

17.

a controlled substance and is not treated as a mere crop or horticultural product under the law. (§ 11054, subd. (d)(13); § 11358.) Although the CUA and MMPA provide defenses to criminal prosecution under limited circumstances, that does not *require* the County to define growing marijuana as an acceptable agricultural use of land for purposes of its zoning laws.

Finally, Defendants apparently argue that the County could not regulate Defendants' use of the land under its zoning laws because Defendants' MMC was noncommercial, for qualified members only, and consequently not a "storefront" or "retail" outlet within the meaning of section 11362.768, subdivision (e). We disagree. Nothing in section 11362.768 indicates that zoning ordinances may only be applied to MMC's that have storefronts or retail outlets, and other language in the statute expressly refutes that notion. (§ 11362.768, subds. (f) & (g).) As they have throughout their appeal, Defendants assume that, because section 11362.775 protects from criminal prosecution certain persons "who … collectively or cooperatively … cultivate marijuana for medical purposes" (§ 11362.775), it means they have an absolute right to engage in these activities wherever they wish without being subject to local regulation or restriction. That is not the law (see § 11362.768, subds. (f) & (g); § 11362.83, subds. (a)-(c)).

We close by reiterating what was stated in *County of Los Angeles v. Hill*, *supra*, 192 Cal.App.4th at page 869: "The statute [§ 11362.775] does not confer on qualified patients and their caregivers the unfettered right to cultivate or dispense marijuana anywhere they choose. The County's constitutional authority to regulate the particular manner and location in which a business may operate (Cal. Const., art. XI, § 7) is unaffected by section 11362.775." That same principle applies where, as here, the particular land use involved is an MMC.

## *DISPOSITION*

The judgment is affirmed.  The County is awarded its costs on appeal.

_____
Wiseman, Acting P.J.

WE CONCUR:


_____
Kane, J.


_____
Peña, J.