Filed 12/1/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DIANA KIRBY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF FRESNO et al. <br><br> Defendants and Respondents. | F070056 <br><br> (Super. Ct. No. 14CECG00551) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Fred Dupras, Judge. (Retired judge of the Fresno Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Henry G. Wykowski & Associates, Henry G. Wykowski, Christopher J. Wood and Andrew Scher for Plaintiff and Appellant.

Best Best & Krieger, Jeffrey V. Dunn and Seena Samimi for Defendants and Respondents.

-ooOoo-

The County of Fresno (County) adopted an ordinance that banned marijuana dispensaries, cultivation and storage of medical marijuana in all its zoning districts. It classified violations of the ordinance as both public nuisances and misdemeanors. It also

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part V.

limited the use of medical marijuana to qualified medical marijuana patients at their personal residences only.

Plaintiff Diana Kirby sued to invalidate the ordinance. She alleged the ordinance created an unconstitutional conflict with the right to cultivate, possess and use medical marijuana provided by the Compassionate Use Act (CUA) (Health & Saf. Code, § 11362.5)[1] and the Medical Marijuana Program (MMP) (§ 11362.7 et seq.) and, more specifically, deprived her of the right to cultivate medical marijuana at her residence for her personal use. Kirby also alleged the ordinance's criminalization of cultivation and storage conflicted with subdivision (e) of section 11362.71, which expressly states that certain persons shall not be "subject to arrest for possession … or cultivation of medical marijuana in an amount established pursuant to [the MMP]."

County demurred, arguing Kirby had failed to state a cause of action because its ordinance did not conflict with the narrowly drawn statutes. The trial court agreed and sustained the demurrer without leave to amend. Kirby appealed, contending her pleading identified three ways the ordinance conflicted with state law, each of which was sufficient to state a cause of action on the legal theory that all or part of the ordinance was preempted by state law. Kirby also contends the trial court abused its discretion in denying her leave to amend.

We conclude the ban on cultivation adopted under the County's authority to regulate land use does not conflict with the CUA or the MMP, which do not *expressly* restrict local government's authority over land use. As to *implicit* restrictions, we recognize the statutory provisions contain some ambiguities, but applicable legal principles require a clear indication of the Legislature's intent to restrict local government's inherent power to regulate land use. The ambiguous provisions fail to

---

[1]     All unlabeled statutory references are to the Health and Safety Code.

provide that clear indication. We therefore uphold the County's ban on marijuana dispensaries, cultivation and storage of medical marijuana.

In contrast, we conclude that the provision in the ordinance that classifies the cultivation of medical marijuana as a misdemeanor is preempted by California's extensive statutory scheme addressing crimes, defenses and immunities relating to marijuana. Among other things, the attempt to criminalize possession and cultivation is not consistent with the *obligation* section 11362.71, subdivision (e) imposes on local officials not to arrest certain persons possessing or cultivating marijuana. Therefore, Kirby has stated a narrow cause of action challenging the validity of the criminalization provision.

We therefore reverse the judgment of dismissal.

## FACTS, BACKGROUND AND PROCEEDINGS

*Appellants*

Kirby lives in an unincorporated area of Fresno County. She has a physician's recommendation for the medical use of marijuana and alleges she is a "qualified patient" as defined by section 11362.7, subdivision (f).[2] Kirby was in a serious accident in 1972 and lost her left leg, broke her back in three places, shattered her face and lost sight in her left eye. She is allergic to pain medications and her chronic pain is treatable only with cannabis as recommended by her physician.

---

[2] For purposes of the MMP, a "qualified patient" is someone "entitled to the protections of [the CUA], but who does not have an identification card issued pursuant to [the MMP]." (§ 11362.7, subd. (f).) In contrast, the MMP defines an individual who is entitled to the protections of the CUA *and* has received a valid identification card pursuant to the MMP as a "[p]erson with an identification card." (§ 11362.7, subd. (c).) Consequently, Kirby's allegation that she is a "qualified patient" can be interpreted as implying that she has not been issued an identification card.

3.

Prior to the adoption of County's ordinance, Kirby relied on the provisions of section 11362.77 to cultivate within her personal residence six or fewer marijuana plants for personal medicinal use.

*Case Law Developments*

Two appellate decisions are important historically because they were decided before County adopted its ordinance and most likely relied upon by County in drafting its ordinance.

In May 2013, the California Supreme Court considered the validity of a city zoning ordinance that banned dispensaries that cultivate and distribute medical marijuana and declared them to be a public nuisance. (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729 (*Inland Empire*).) In that case, the city filed a complaint against a dispensary and sought injunctive relief to abate the public nuisance. (*Id*. at pp. 740-741.) The trial court granted a preliminary injunction, which was affirmed by the Court of Appeal and the Supreme Court. (*Id*. at p. 742.) The court concluded that the CUA and MMP did not preempt the city's ban on marijuana dispensaries, which was a valid exercise of the local jurisdiction's inherent authority to regulate land use. (*Id*. at pp. 738, 744.)

In November 2013, the Third Appellate District considered whether the land use authority that allowed Riverside to ban dispensaries also allowed a city to ban the cultivation of medical marijuana. The ordinance in question stated medical marijuana cultivation by any person was "'prohibited in all zone districts within the City of Live Oak.'" (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 979 (*Maral*).) The plaintiffs in *Maral* challenged the ordinance, alleging it violated the CUA, the MMP, and their constitutional rights to equal protection and due process. (*Id*. at pp. 979-980.) The trial court sustained the city's demurrer and dismissed the plaintiffs' second amended complaint without leave to amend. (*Id*. at p. 980.) The Third Appellate District affirmed the dismissal. (*Id*. at p. 985.) The court (1) stated the right to cultivate marijuana was the

basis for each of the plaintiffs' causes of action and (2) concluded no such right existed. (*Id*. at p. 984.) The court relied on *Inland Empire* and *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704 (*Browne*), a case that upheld a county ordinance that restricted (but did not ban) the cultivation of medical marijuana.[3]

*County Ordinance*

In January 2014—less than two months after the *Maral* decision—County's board of supervisors considered and unanimously adopted Ordinance No. 14-001 and amended the Fresno County Code (FCC).[4] The stated purpose and intent of Ordinance No. 14-001 was "to prohibit cultivation of medical marijuana in order to preserve the public peace, health, safety and general welfare of the citizens of Fresno County." (FCC, § 10.60.010.) The medical marijuana provisions of the ordinance took effect in early February 2014.

Sections 10.60.050 and 10.60.060 of the FCC prohibit medical marijuana dispensaries and cultivation "in all zone districts in the County." "Cultivation" is defined as "the planting, growing, harvesting, drying, processing, or storage of one or more marijuana plants or any part thereof in any location." (FCC, § 10.60.030(D).)

Violations of the FCC's ban on the cultivation and storage of medical marijuana "is declared to be a public nuisance and each person or responsible party is subject to abatement proceedings under Chapter 10.62." (FCC, § 10.60.070.) Under the abatement provisions, a public official with information that such a public nuisance "exists upon

---

[3] Shortly after the Third Appellate District decided *Browne*, this court filed its opinion in *County of Tulare v. Nunes* (2013) 215 Cal.App.4th 1188 (*Nunes*), which concluded a county ordinance restricting the location of medical marijuana collectives and cooperatives to commercial and manufacturing zones did not conflict with state law.

[4] Ordinance No. 14-001 was not the first enactment by County to address medical marijuana. "In September 2010, the Fresno County Board of Supervisors, citing recent violence, passed an emergency initiative to ban the outdoor cultivation of medical marijuana." (Starr, *The Carrot and the Stick: Tailoring California's Unlawful Marijuana Cultivation Statute to Address California's Problems* (2013) 44 McGeorge L.Rev. 1069, 1087 (*Starr*).)

private property in the unincorporated area of the County, shall make a reasonable investigation of the facts and if possible inspect the property to determine whether or not a public nuisance exists." (FCC, § 10.62.030.) "Inspections may include photographing the conditions or obtaining samples or other physical evidence. If an owner, occupant or agent refuses permission to enter or inspect, the public official may seek an inspection warrant pursuant to the procedures provided for in the California Code of Civil Procedure Section 1822.50 through Section 1822.59." (*Ibid.*)

If a public official reasonably determines that a public nuisance involving medical marijuana exists, the official shall give written notice to the property owner, either by mail or by posting the notice on the property. (FCC, § 10.62.040(A).) The notice shall describe the public nuisance and the work required to abate the nuisance. (FCC, § 10.62.040(B).) The notice shall order the nuisance be abated within a reasonable time as determined by the official, which normally will be 15 days from the mailing of the notice. (FCC, § 10.62.040(C).)

The administrative penalty for violations is $1,000 per plant plus $100 per plant for each day that the plant remains unabated past the deadline set in the written notice ordering abatement. (FCC, § 10.64.040(A).) In addition, persons who violate the FCC's prohibitions relating to medical marijuana "shall be guilty of a misdemeanor and subject to the penalties set forth in Chapter 1.12, as well as the administrative penalties as set forth in Chapter 10.64." (FCC, § 10.60.080(A).)

If County brings a civil action to enforce the medical marijuana provisions in the FCC, "the person responsible for such violation shall be liable to the County for costs of the suit, including, but not limited to, attorney's fees." (FCC, § 10.60.080(C).)

The ordinance also contains a savings or severability provision, which states that if any part of County's medical marijuana ordinance is held to be invalid, unlawful, or unconstitutional, it shall not affect the validity of any other part of the ordinance. (FCC, § 10.60.090.)

6.

*Kirby Lawsuit*

In February 2014, after the FCC medical marijuana provisions became effective, Kirby filed a verified petition for writ of mandate and complaint for injunction and declaratory relief against the County, seeking to invalidate the ordinance. County demurred, contending (1) Kirby had no constitutional or statutory right to cultivate marijuana at her personal place of residence and (2) the medical marijuana provisions in the FCC were not preempted by state law.

In June 2014, a hearing was held on the demurrer. The trial court took the matter under advisement and subsequently issued a June 13, 2014, minute order sustaining the demurrer without leave to amend. The written order did not set forth the court's rationale for sustaining the demurrer or for denying leave to amend.

Kirby timely appealed the dismissal of her action.

## DISCUSSION

I.    BASIC PRINCIPLES

A.    Standard of Review for Demurrers

Appellate courts independently review the ruling on a general demurrer and make a de novo determination of whether the pleading "alleges facts sufficient to state a cause of action under any legal theory." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

Generally, appellate courts "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*Dinuba*).) The demurrer is treated as admitting all material facts properly pleaded, but does not admit the truth of contentions, deductions or conclusions of law. (*Ibid*.; see Code Civ. Proc., § 452 [pleading "must be liberally construed, with a view to substantial justice between the parties"].)

B.  Overview of California's Medical Marijuana Statutes

1.  *Compassionate Use Act*

In 1996, California's voters approved Proposition 215, which became codified in section 11362.5 and known as the CUA.  The operative provision of the CUA created a limited defense for patients and the patients' primary caregivers to the crimes for the simple possession or cultivation of marijuana:

> "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."  (§ 11362.5, subd. (d).)

The stated purposes of the CUA are:  "(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use has been deemed appropriate and has been recommended by a physician …"; "(B) [t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction"; and "(C) [t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana."  (§ 11362.5, subd. (b)(1).)

2.  *Medical Marijuana Program*

In 2003, the Legislature enacted the MMP to (1) clarify the scope of the CUA, (2) facilitate prompt identification of qualified patients and their designated caregivers to avoid unnecessary arrests and prosecutions, (3) provide guidance to law enforcement officers, (4) "[p]romote uniform and consistent application of the [CUA] among the counties within the state,"[5] and (5) "[e]nhance the access of patients and caregivers to

---

[5]  This declaration of purpose was limited to *the application of the CUA*.  This limitation undercuts the inference that the Legislature intended to promote consistency among all laws, including local land use regulations, addressing medical marijuana.  The limited scope of the Legislature's purpose is reinforced by the idea that the field (i.e., area

medical marijuana through collective, cooperative cultivation projects."[6]  (Stats. 2003, ch. 875, § 1(b)(1)-(3).)

The MMP added "18 new code sections that address the general subject matter covered by the CUA." (*People v. Kelly* (2010) 47 Cal.4th 1008, 1014 (*Kelly*).)  The MMP provides for the issuance of identification cards to qualified patients (§§ 11362.71-11362.755) and provides a safe harbor for qualified patients as to the amount of marijuana they may possess and the number of plants they may maintain (§ 11362.77). Persons with valid identification cards receive certain protections under the MMP from both arrest and criminal liability.

In particular, the MMP states that persons with an identification card who transport or possess marijuana for their personal use "shall not be subject, on that sole basis, to criminal liability" under sections 11357 (possession), 11358 (cultivation), 11359 (possession for sale), 11366 (maintaining location for selling, giving away or using controlled substances), 11366.5 (managing location for manufacture or storage of controlled substance), or 11570 (drug den abatement law).  (§ 11362.765, subd. (a).)

The MMP also provides collective or cooperative cultivation of marijuana with a similar defense to criminal liability under the same sections.  (§ 11362.775.)  As a result, the MMP "expanded the scope of protection beyond that initially provided by the CUA,

---

of law) of crimes and penalties is separate from the field of land use regulation.  In short, expressing a purpose of promoting consistent application *of the CUA*, a narrow statute operating in the field of criminal law, is quite different from stating a purpose to promote consistency among local land use regulations addressing medical marijuana. (See generally, *Inland Empire*, *supra*, 56 Cal.4th 729.)

[6]     Over 20 other states have legalized some form of retail distribution of marijuana, but those states have adopted different rules on whether local communities may ban retail distribution.  (Mikos, *Marijuana Localism* (2015) 65 Case W. Res. L.Rev. 719, 764.) Five states have expressly authorized local bans on retail shops (*ibid*. [Alaska, Colorado, Montana, Nevada and Vermont], while three states explicitly denied local governments that power (*id*. at p. 765 [Arizona, Delaware & Oregon]).

which was limited to cultivation of and possession of medical marijuana." (*People v. Baniani* (2014) 229 Cal.App.4th 45, 55.)

As to the protection against arrest, subdivision (e) of section 11362.71 states that no person "in possession of a valid identification card shall be subject to arrest for possession, transportation, delivery, or cultivation of medical marijuana in an amount established pursuant to [the MMP]," unless there is reasonable cause to believe the card is fraudulent.

As a potential source of a right to cultivate and possess medical marijuana, Kirby refers to provisions in section 11362.77 stating that a qualified person "may possess" specified quantities of marijuana and "may also maintain" a certain number of plants. (§ 11362.77, subds. (a), (f).) Section 11362.77, subdivision (c) also authorizes counties and cities to adopt local guidelines that exceed the state limits, but says nothing about reducing those limits. The relevant provisions of section 11362.77 are quoted and discussed in part III.C, *post*.

Section 11362.83 addresses the MMP's scope and relationship with local ordinances. Its provisions are quoted and discussed in part I.C.3, *post*.

### C. State Preemption

The California Constitution states that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) The police power of local government is broad and "preemption by state law is not lightly presumed." (*Inland Empire*, *supra*, 56 Cal.4th at p. 738.)

Under the constitution, a local ordinance "in conflict with" a state statute is void. (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.) For purposes of California preemption doctrine, a "conflict" exists if the local ordinance (1) duplicates the state statute, (2) contradicts the statute, or (3) enters an area fully occupied by general law. (*Ibid*.) The

latter category requires an examination of the Legislature's intent to fully occupy an area, which may be either expressed or implied.  (*Ibid*.)

### 1. Duplication

Local ordinances are said to be duplicative of general law when they are "coextensive" with the state statute.  (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.)  For example, in *In re Portnoy* (1942) 21 Cal.2d 237, the court determined a county ordinance declaring it unlawful to own or possess any slot machine involving chance was invalid as duplicating a section of the Penal Code.  (*Id*. at p. 239-242; see *In re Mingo* (1923) 190 Cal. 769, 772-774 [county ordinance punishing possession of intoxicating liquor, an act already punished under state law, was void]; *In re Sic* (1887) 73 Cal. 142 [local law making it unlawful for persons to assemble for the purpose of smoking opium duplicative of state statute making it a crime to visit any place for the purpose of smoking opium].)

In *Inland Empire*, the court determined there was no duplication between state law and the city's ordinance banning dispensaries as the two schemes were not coextensive: "The CUA and the MMP 'decriminalize,' for state purposes, specified activities pertaining to medical marijuana, and also provide that the *state's* antidrug nuisance statute cannot be used to abate or enjoin these activities.  On the other hand, the Riverside ordinance finds, for local purposes, that the use of property for certain of those activities *does* constitute a *local* nuisance." (*Inland Empire*, *supra*, 56 Cal.4th at p. 754.)  In short, state laws relating to crime and ordinances regulating land use address separate matters and, thus, do not duplicate one another.

### 2. Contradiction

Conflict of the contradictory type exists for purposes of preemption when the local ordinance is "inimical" to the state statute, which means the local "ordinance directly requires what the state statute forbids or prohibits what the state enactment demands. [Citations.]" (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.)  Under this test, no preemption

11.

exists "where it is reasonably possible to comply with both the state and local laws." (*Ibid*.) Conversely, an inimical contradiction exists where "it is impossible simultaneously to comply with both" the state and local laws. (*Id*. at pp. 754-755.)

The impossibility-of-simultaneous-compliance test used in *Inland Empire* appears to be more difficult to meet than the test used previously. For example, in *Ex Parte Daniels* (1920) 183 Cal. 636, a local ordinance that set the maximum speed limit for vehicle below that set by state law was determined to be "in direct conflict with the state law and, therefore, void." (*Id*. at p. 648.) In *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893 at page 898, the Supreme Court cited *Ex Parte Daniels* as a case where local legislation was "contradictory" to general law.[7]

In the present case, we conclude the impossibility-of-simultaneous-compliance test used in *Inland Empire* applies to determine whether a conflict of the contradictory type exists. (But see *Inland Empire*, *supra*, 56 Cal.4th at pp. 763-765 (conc. opn. of Liu, J.) [contradictory type of state preemption can occur even if it is possible for a private party to comply with both state and local law by refraining from activity].)

*3.     Area Fully Occupied—Intent of Legislature*

The third type of state preemption exists when the local legislation enters an area fully occupied by state law. Whether an area is fully occupied is a matter of legislative intent, which can be expressed or implied. (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.)

An expressed intent to fully occupy an area is determined by the plain language of the statute. (*Inland Empire*, *supra*, 56 Cal.4th at p. 753.) As relevant in this appeal,

---

**7**       One commentator has suggested the California Supreme Court adopted the impossibility-of-simultaneous-compliance test for purposes of state preemption doctrine to avoid "the potential for implied federal conflict preemption." (*Dual Sovereignty— Preemption—California Supreme Court Upholds Local Zoning Ban on Medical Marijuana Dispensaries—[Inland Empire]* (2014) 127 Harv. L.Rev. 1204, 1209.) By interpreting state law as it did, "the California Supreme Court may have shielded state legalization efforts from federal scrutiny for the time being." (*Id*. at p. 1211.)

implied intent may be manifested where (1) the subject matter has been so fully and completely covered by general law as to indicate clearly that it has become exclusively a matter of state concern or (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action. (*Id*. at p. 743.)

In the present case, our examination of the Legislature's intent is aided by the provision in the MMP addressing the scope of the MMP and its relationship to local ordinances. The 2003 version of section 11362.83 stated: "Nothing in this article shall prevent a city or other local governing body from adopting and enforcing laws *consistent with* [the MMP]." (Stats. 2003, ch. 875, § 2, italics added.) This expression of intent was expanded in 2011, when section 11362.83 was amended to read:

> "Nothing in this article shall prevent a city or other local governing body from adopting and enforcing any of the following: [¶] (a) Adopting local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective. [¶] (b) The civil and criminal enforcement of local ordinances described in subdivision (a). [¶] (c) Enacting other laws consistent with [the MMP]." (Stats. 2011, ch. 196, § 1.)

Two aspects of section 11362.83 are worth noting. First, the current version explicitly authorizes local governments to "regulate"[8] medical marijuana cooperatives and collectives, yet does not mention the regulation of *personal* possession or cultivation. Second, section 11362.83, subdivision (c) authorizes local government to enact other laws "consistent with" the MMP, which is different from the constitutional phrase "not in conflict with." (Cal. Const., art. XI, § 7.) The meaning and application of subdivision (c) of section 11362.83 was not discussed by the Supreme Court in *Inland Empire* or by the Third Appellate District in *Maral*. Consequently, those cases establish no precedent for

---

[8] The California Supreme Court has interpreted "regulate" to include the authority to ban such facilities. (*Inland Empire*, *supra*, 56 Cal.4th at p. 760.)

13.

how that subdivision should be applied in this case. (See *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 [opinions must be understood in accordance with the facts and issues before the court; they are not authority for propositions not considered or analyzed by the court].)

>    4.    *Occupation of the Areas of Land Use, Crimes and Medical Practices*

The concept of an "area fully occupied by state statute" requires us to consider more than the text of the relevant statutes, because not all areas of law are treated the same under California's preemption doctrine. For purposes of the present case, three areas of law are relevant—(1) land use regulation, (2) crimes involving controlled substances, and (3) medical practices.

Land use regulation in California historically has been regarded as a function of local government. (*Inland Empire*, *supra*, 56 Cal.4th at p. 742.) Consequently, courts presume, absent a clear indication of preemptive intent from the Legislature, that local land use regulations are *not* preempted by state statute. (*Id*. at p. 743.)

In contrast, the definition of crimes and penalties involving controlled substances is an area of law traditionally addressed at the state level. Thus, the presumption against preemption that applies to local land use regulations does not apply in the area of criminal law. For example, the California Uniform Controlled Substances Act (UCSA) (§ 11000 et seq.)[9] is regarded as so comprehensive, thorough and detailed in defining drug crimes and specifying penalties as to manifest the Legislature's intent to preclude local regulation of such crimes and penalties. (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1071 (*O'Connell*) [local ordinance for the forfeiture of vehicles was preempted by the UCSA].)

---

[9]    The UCSA consists of sections 11000 through 11651 and, therefore, includes the provisions defining crimes involving marijuana and the decriminalization provisions of the CUA (§ 11362.5) and the MMP (§§ 11362.7-11362.9).

As to medical practices, that area of law (like the definition of crimes and related penalties) historically has been addressed under the state police power. (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 757 (*Anaheim*).) Consequently, local regulation of medical practices do not have the benefit of a presumption similar to the presumption that protects local land use regulations.

II.     CRIMINALIZATION

Section 10.60.080(A) of the FCC sets forth the penalties for violating the medical marijuana ordinance by providing that violators "shall be guilty of a misdemeanor and subject to the penalties as set forth in Chapter 1.12 .…"  It also provides that violators are subject to administrative penalties and other enforcement remedies.  (FCC, § 10.60.080(A).)

A.     Contentions

Kirby contends the criminalization provision in the ordinance conflicts with California law because it subjects persons to arrest and criminal prosecution for cultivating and storing medical marijuana even if they hold a valid patient identification card.  In particular, Kirby refers to subdivision (e) of section 11362.71, which states that no person "in possession of a valid identification card shall be subject to arrest for possession, transportation, delivery, or cultivation of medical marijuana in an amount established pursuant to [the MMP]," unless there is reasonable cause to believe the card is fraudulent.  Kirby argues this statute preempts the ordinance provision criminalizing cultivation and storage.

County contends that the CUA and the MMP provide a limited immunity from prosecution under state statutes, but provide no immunity from prosecution pursuant to a local law such as County's.  County contends that "the California Supreme Court has held that the CUA and the MMP do not foreclose the arrest of qualified patients for offenses such as possession and cultivation of marijuana" and cites *People v. Mower*

15.

(2002) 28 Cal.4th 457 (*Mower*) as support. County argues that this court should not expand the CUA and MMP to provide additional immunities.

Kirby's reply brief argues that County (1) has not addressed the unambiguous text of subdivision (e) of section 11362.71 and its prohibition against arrests and (2) has misconstrued the holding of *Mower*, which was decided *before* the MMP was passed by the Legislature.

### B. The MMP's Prohibition of Arrests

#### 1. *Mower and the MMP*

In *Mower*, the California Supreme Court determined the CUA does not provide complete immunity from arrest and prosecution; instead, it provided a limited immunity that allows a defendant to raise his or her status as a qualified patient or primary caregiver as a defense at trial or in a motion to set aside an indictment or information prior to trial. (*Mower*, *supra*, 28 Cal.4th at p. 464.) In reaching this conclusion, the court stated that immunity *from arrest* is exceptional and ordinarily does not exist without an express grant from the Legislature. (*Id*. at p. 469.) The court filed its decision in *Mower* in July 2002, well before the Legislature passed the MMP in 2003. (See Stats. 2003, ch. 875, §§ 1-3.)

We agree with Kirby as to the scope of the opinion filed in *Mower*. It addressed only the CUA and said nothing about the MMP. Accordingly, we reject County's position that *Mower* holds the MMP does not foreclose the arrest of qualified patients for possessing and cultivating medical marijuana.

#### 2. *Supreme Court's View of the MMP's Prohibition of Arrests*

The MMP's prohibition of certain arrests was discussed by the California Supreme Court in *Inland Empire*, *supra*, 56 Cal.4th at page 754, footnote 7. Although the court's discussion of the prohibition was dicta, we regard it as persuasive. (See *Hubbard v.*

16.

*Superior Court* (1997) 66 Cal.App.4th 1163, 1169 [dicta from Supreme Court is considered persuasive and generally should be followed].)

The Supreme Court's statements about the prohibition of arrests were part of its discussion of express preemption and were made to illustrate the narrow scope of the MMP. The court stated the MMP "imposes only two obligations on local governments." (*Inland Empire*, *supra*, 56 Cal.4th at p. 754, fn. 7.) One of these obligations "prohibits a local law enforcement agency or officer from refusing to accept an identification card as protection against *arrest* for the possession, transportation, delivery, or cultivation of specified amounts of medical marijuana, except upon 'reasonable cause to believe that the information contained in the card is false or fraudulent, or the card is being used fraudulently.' (§ 11362.78; see § 11362.71, subd. (e).)" (*Inland Empire*, *supra*, at p. 754, fn. 7.) The Supreme Court's clearly expressed position is exactly the opposite of County's view that the Supreme Court has determined the MMP does *not* foreclose the arrest of certain persons possessing or cultivating marijuana.

For purposes of determining whether the MMP's protection against arrest preempts the criminalization provision in FCC section 10.60.080(A), we adopt the Supreme Court's interpretation of subdivision (e) of section 11362.71 and treat that provision as imposing an *obligation* on local law enforcement agencies and officials.

### 3. *Prohibition of Arrest Preempts Local Criminalization*

The MMP's protection against "arrest" presents the following question of statutory interpretation. Does the prohibition of arrests also prohibit *prosecutions* under local ordinances? We conclude it does.

When enacting the MMP, the Legislature explicitly stated its intent to "facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary *arrest and prosecution* of these individuals and provide needed guidance to law enforcement officers." (Stats. 2003, ch. 875, § 1(b)(1), italics

17.

added.)  The Legislature's reference to "arrest and prosecution" in its declaration of intent supports the interpretation that the obligation of local law enforcement agencies and officers to not arrest persons with valid identification cards also precludes them from taking subsequent steps in the criminal justice process, including prosecuting protected persons under a local ordinance.

A further indication of the legislative intent underlying subdivision (e) of section 11362.71 comes from the absence of the limiting phrases deemed significant to the interpretation of the statutory provisions at issue in *Inland Empire*.  Those provisions used the phrases "shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5 or 11570" (§ 11362.775) and "shall not be subject, on that sole basis, to criminal liability under Section 11357, 11358, 11359, 11360, 11366, 11366.5 or 11570" (§ 11362.765, subd. (a)). The Supreme Court relied on the words "sole" and "solely" and the enumeration of specific sections of state law to conclude that the Legislature intended the immunity granted by sections 11362.765 and 11362.775 to have a narrow reach.  (See *Inland Empire*, *supra*, 56 Cal.4th at pp. 748-749.)  Accordingly, the absence of such phrases from subdivision (e) of section 11362.71 indicates the Legislature did not intend similar limitations to apply to the prohibition of arrest.  Thus, a comparison of the wording of subdivision (e) of section 11362.71 to the text of sections 11362.765 and 11362.775 supports the conclusion that the Legislature intended the prohibition of arrests of certain persons to extend to all such arrests, whether made under local or state law.

This view of legislative intent comports with the Supreme Court's interpretation of the UCSA set forth in *O'Connell*.  The court described the UCSA as defining controlled substances (including marijuana), regulating their use, and setting penalties for their unlawful possession and distribution.  As to the effect of the UCSA on local legislation, the court stated:

18.

"The comprehensive nature of the UCSA in defining drug crimes and specifying penalties (including forfeiture) is so thorough and detailed as to manifest the Legislature's intent to preclude local regulation [of crimes and penalties]. The USCA accordingly occupies the field of penalizing crimes involving controlled substances, thus impliedly preempting the City's forfeiture ordinance to the extent it calls for the forfeiture of vehicles used 'to acquire or attempt to acquire' [citation] controlled substances regulated under the UCSA." (*O'Connell*, *supra*, 41 Cal.4th at p. 1071.)

In *Inland Empire*, the court refused to extend the statements in *O'Connell* about occupying the field of penalizing crimes to the field of land use regulation, stating "there is no similar evidence in this case of the Legislature's intent to preclude local regulation of facilities that dispense medical marijuana." (*Inland Empire*, *supra*, 56 Cal.4th at p. 757.) Thus, the field preemption described in *O'Connell* did not apply in *Inland Empire* because different areas of law—crimes versus land use regulation—were involved.

We conclude the UCSA and the MMP's prohibition of arrests manifest the Legislature's intent to fully occupy the area of criminalization and decriminalization of activity directly related to marijuana. As a result, the criminalization provision in FCC section 10.60.080(A) is "in conflict with" and thus preempted by the UCSA and subdivision (e) of section 11362.71. (Cal. Const., art. XI, § 7.) Alternatively, the criminalization provision is void because it is not "consistent with" the MMP as required by subdivision (c) of section 11362.83. Consequently, Kirby has stated a cause of action for the preemption of the part of FCC section 10.60.080(A) that provides a person violating the ordinance is "guilty of a misdemeanor and shall be subject to the penalties as set forth in Chapter 1.12 .…"

As to the scope of this cause of action, we conclude it does not provide a basis for invalidating the entire ordinance because the ordinance's severability provision expresses the intent that the invalidity of any part shall not affect the validity of any other part of the ordinance. (FCC, § 10.60.090.) Thus, the only provision subject to invalidation under this legal theory is the provision classifying violations of the ordinance as misdemeanors. (Cf. *Kelly*, *supra*, 47 Cal.4th at pp. 1048-1049 [§ 11362.77 invalidated

19.

only to the extent of its unconstitutional application; lower court erred in voiding § 11362.77 in its entirety].) To further explain the scope of the cause of action stated by Kirby, we note the possibility that failing to abate a public nuisance involving the cultivation of medical marijuana might be prosecuted as a misdemeanor. This *indirect* criminal sanction is not preempted because the failure to abate a public nuisance after notice is recognized as a separate crime by the Legislature. (See Pen. Code, § 373a [person who allows a public nuisance to exist on his or her property after reasonable notice in writing is guilty of a misdemeanor]; see also, § 11362.83, subd. (b).)

C.     <u>Federal Preemption</u>

*1.     County's Contention*

County argues that allowing state preemption of the ordinance would create a conflict between state law and the federal Controlled Substances Act (CSA) (21 U.S.C. § 801 et seq.), which prohibits the use of marijuana (a Schedule I drug) except as part of a federally-approved research program.

*2.     Federal Preemption and the CSA*

Clause 2 of article VI of the United States Constitution provides that the laws of the United States shall be the supreme law of the land, notwithstanding anything in the law of a state to the contrary. Consequently, under the supremacy clause, Congress has the power to preempt state law.

Courts considering whether Congress exercised its power to preempt state law are guided by a strong presumption that Congress has not exercised that power in areas historically addressed under the state police power. (*Anaheim*, *supra*, 187 Cal.App.4th at p. 757.) Such areas include the regulation of medical practices and state criminal sanctions for drug possession. (*Ibid.*)

The federal preemption argument presented in this case must be analyzed under Congress's explicit statement regarding the CSA's effect on state law, which is set forth in section 903 of title 21 of the United States Code:

> "No provision of [the CSA] shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict* between that provision of this subchapter and that State law *so that the two cannot consistently stand together*." (Italics added.)

Under this provision, courts considering preemption under the CSA need only consider two of the four species of federal preemption—namely, conflict preemption and obstacle preemption. (*Anaheim*, *supra*, 187 Cal.App.4th at p. 758.)

In this case, County's argument about federal preemption is not fully developed because County has not (1) acknowledged that Congress addressed the preemptive effect of the CSA in section 903 of title 21 of the United States Code; (2) presented arguments identifying and applying the tests for conflict or obstacle preemption; or (3) addressed *Anaheim* and its conclusion that the CSA does not preempt the CUA or the MMP.

### 3. Conflict Preemption

Federal conflict preemption is difficult to establish because it requires showing that it is impossible to comply with the requirements of both federal and state law. (*Wyeth v. Levine* (2009) 555 U.S. 555, 573; *Anaheim*, *supra*, 187 Cal.App.4th at p. 758.) In this case, it is possible for local law enforcement agencies and officers to comply with their obligation not to arrest persons with valid identification cards and comply with the CSA. The CSA does not require local law enforcement officers to arrest persons who possess or cultivate marijuana. Indeed, Congress does not have the authority to compel state or local officers to enforce federal regulatory programs. (*Anaheim, supra,* at p. 761.) Consequently, a local officer can forgo making a marijuana arrest without violating federal law. Therefore, we agree with the Fourth District's conclusion that "[n]o positive

21.

conflict exists because neither the CUA nor the MMPA requires anything that the CSA forbids." (*Id*. at p. 759.) Also, the state statutes do not forbid anything that the CSA requires.

For purposes of illustration, we note that a positive conflict would exist if California's statutes *required* local governments to grow and distribute marijuana because those acts are forbidden by the CSA. (See 21 U.S.C. §§ 841(a)(1), 844(a); see generally, *Gonzales v. Raich* (2005) 545 U.S. 1 [application of CSA provisions criminalizing the manufacture, distribution or possession of marijuana to intrastate growth and use of medical marijuana did not violate Commerce Clause].)

### 4. *Obstacle Preemption*

Under the test for obstacle preemption, the state law must yield if the purpose of the federal act cannot otherwise be accomplished—that is, its operation is frustrated and its provisions refused their natural effect. The marijuana provisions in the CSA are capable of being enforced by federal officials and its purpose accomplished even if local officers abide by their obligation under section 11362.71, subdivision (e) and refrain from arresting persons with valid identification cards. California's statutes do not require local officials (1) to interfere with federal enforcement efforts or (2) to aid and abet individuals violating the CSA. Therefore, the CUA and MMP are not obstacles to federal law under applicable preemption principles.

### 5. *Summary*

The obligation imposed on local law enforcement agencies and officers by section 11362.71, subdivision (e) -- to accept an identification card as protection against arrest for certain medical marijuana-related activities, except upon reasonable cause to believe that the information contained in the card is false or fraudulent, is not preempted by

federal law.  Thus, County cannot rely on federal preemption to save the criminalization provision in FCC section 10.60.080(A) from being invalidated under state law.[10]

## III.     A RIGHT TO PERSONALLY CULTIVATE

### A.     Contentions of the Parties

Kirby contends that she and "all medical marijuana patients have an express right to cultivate at least six marijuana plants for personal use."  She argues that subdivisions (a), (c) and (f) of section 11362.77, when read together, "provide that localities must allow cultivation of as least six mature or 12 immature marijuana plants for personal medical use and localities are *only* authorized by the Legislature 'to exceed' these quantities, not to subvert them."

County argues that there is no constitutional right to cultivate marijuana and the limited immunity provided by the CUA and the MMP to prosecution under specifically enumerated provisions of state criminal law does not immunize marijuana cultivation from the application of local land use regulations.   We agree.

### B.     Compassionate Use Act

One basis for the claim that qualified patients have a right of access to medical marijuana is the declaration that a purpose of the CUA is "[t]o ensure that seriously ill Californians have the *right* to obtain and use marijuana for medical purposes."  (§ 11362.5, subd. (b)(1)(A), italics added.)

The California Supreme Court addressed the wording of this provision by stating that the statute did not create a broad right to use marijuana without hindrance or inconvenience.  (*Inland Empire*, *supra*, 56 Cal.4th at p. 746, quoting *Ross v. RagingWire*

---

[10]     "Just as the federal government may not commandeer state officials for federal purposes, a [local government] may not stand in for the federal government and rely on purported federal preemption to implement federal legislative policy that differs from corresponding, express state legislation concerning medical marijuana."  (*Anaheim*, *supra*, 187 Cal.App.4th at pp. 761-762.)

*Telecommunications, Inc.* (2008) 42 Cal.4th 920, 928 (*Ross*).) The court carefully explained the scope of the CUA by stating that "the only 'right' to obtain and use marijuana created by the [CUA] is the right of 'a patient, or ... a patient's primary caregiver, [to] possess[ ] or cultivate[ ] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician' without thereby becoming subject to punishment under sections 11357 and 11358 of the Health and Safety Code. (*Id*., § 11362.5, subd. (d).)" (*Ross*, *supra*, at p. 929.) Thus, the substantive provisions of CUA creates a narrow exception that applies only in the circumstances specified. (*Inland Empire*, *supra*, at p. 746.) When the specified circumstances exist, the patient is not subject to "two specific state statutes prohibiting the possession and cultivation of marijuana, sections 11357 and 11358, respectively." (*Id.* at p. 744; see *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 774 ["the [CUA] created a limited defense to crimes, not a constitutional right to obtain marijuana"].)

The Supreme Court's interpretation of the CUA and its description of the narrow "right" created by that statute is controlling. Consequently, the declaration of purpose in section 11362.5, subdivision (b)(1)(A) does not establish an absolute right to obtain and use marijuana. The "right" to obtain and use medical marijuana only allows specified persons to avoid punishment under sections 11357 (possession) and 11358 (cultivation). (§ 11362.5, subd. (d).) Consequently, we conclude the CUA does not create a right to cultivate medical marijuana that is beyond the reach of local land use regulations. Therefore, County's land use ban on cultivation is "not in conflict with" the CUA. (Cal. Const., art. XI, § 7.)

C. Medical Marijuana Program

1. *Statutory Text from section 11362.77*

The subdivisions of the MMP that Kirby contends establish an express right to cultivate medical marijuana provide:

"(a) A qualified patient or primary caregiver may possess no more than eight ounces of dried marijuana per qualified patient. In addition, a qualified patient or primary caregiver may also maintain no more than six mature or 12 immature marijuana plants per qualified patient.

"(b) If a qualified patient or primary caregiver has a doctor's recommendation that this quantity does not meet the qualified patient's medical needs, the qualified patient or primary caregiver may possess an amount of marijuana consistent with the patient's needs.

"(c) Counties and cities may retain or enact medical marijuana guidelines allowing qualified patients or primary caregivers to exceed the state limits set forth in subdivision (a). [¶] … [¶]

"(f) A qualified patient or a person holding a valid identification card, or the designated primary caregiver of that qualified patient or person, may possess amounts of marijuana consistent with this article." (§ 11362.77.)

Kirby argues the phrases "may possess" contained in subdivisions (a) and (f) of section 11362.77 create a right to possess medical marijuana and the phrase "may also maintain" creates a right to cultivate marijuana plants.

2.      *Case Law*

In *Kelly*, *supra*, 47 Cal.4th 1008, the California Supreme Court held that section 11362.77 was invalid insofar as it established quantity *limits* that restricted the CUA provisions allowing patients to possess an amount of medical marijuana reasonably related to the patient's current medical needs. The quantity limits were regarded as an impermissible legislative amendment of an initiative measure and, thus, unconstitutional. (*Kelly, supra,* at pp. 1030 & 1046.) Despite the unconstitutionality, the Supreme Court refused to sever section 11362.77 in its entirety from the MMP, stating the section continued to have legal significance and could operate as part of the MMP even though it could not restrict a CUA defense. (*Kelly*, *supra*, at pp. 1048-1049.) To implement this conclusion, the court regarded the quantity limits in section 11362.77 as "a 'safe harbor' protecting against prosecution of those who legitimately possess amounts within those limits." (*Kelly, supra,* at p. 1015, fn. 5.)

25.

The fact that section 11362.77 has been declared unconstitutional in certain applications does not support the conclusion that its provisions have no effect. (See *Nunes*, *supra*, 215 Cal.App.4th at p. 1203.) Consequently, to the extent County argues that there is no reason for this court to consider section 11362.77 because it was declared unconstitutional, we reject that argument.

In *Maral*, *supra*, 221 Cal.App.4th 975, the Third Appellate District upheld a city ordinance that banned medical marijuana dispensaries and all cultivation of medical marijuana within the city limits. (*Id*. at p. 979.) The court concluded that the MMP did not preempt the authority of cities to regulate, even prohibit, the cultivation of marijuana. (*Ibid*.) The court made no mention of section 11362.77 and, as a result, did not analyze the statutory text relied upon by Kirby to support her argument about the creation of a right to cultivate medical marijuana. Consequently, under the rules of appellate practice, *Maral* is not precedent for how the text of section 11362.77 should be interpreted. (See *Kinsman v. Unocal Corp.*, *supra*, 37 Cal.4th at p. 680 [opinions are not authority for propositions not considered by the court].)

Similarly, section 11362.77 was not analyzed in *Inland Empire* because that case involved a local ban of medical marijuana dispensaries, not a ban of personal cultivation. Therefore, we do not regard *Inland Empire* as binding authority for how the provisions in section 11362.77 should be interpreted, despite the fact *Inland Empire* establishes or reiterates certain general principles relating to the CUA and the MMP and provides guidance for applying preemption doctrine to local land use ordinances.

Based on the lack of published opinions analyzing the text of subdivisions (a), (c) and (f) of section 11362.77, we will discuss each of those subdivisions.

### 3. Subdivision (a) of Section 11362.77

The first step of statutory interpretation is to examine the words of the statute for ambiguity or a plain meaning. (*Flood v. Wyeth Laboratories, Inc.* (1986) 183 Cal.App.3d 1272, 1277; see *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1494-1495.)

The safe harbor provision of subdivision (a) of section 11362.77 states that qualified patients "may possess" and "may also maintain" specified amounts of marijuana. For purposes of this appeal, we assume that this language is ambiguous and can reasonably be interpreted broadly to create a statutory right, or narrowly to define a requirement relating to the scope of the safe harbor from criminal liability. The narrow interpretation is supported by section 11362.765, subdivision (a), which states that, "[s]ubject to the requirements of this article," certain individuals shall not be subject to criminal liability under the specified state statutes. The use of the phrase "requirements of this article" creates the possibility that the safe harbor provision in subdivision (a) of section 11362.77 is one of the requirements of the MMP—that is, persons are required to possess or maintain no more that the specified amounts of marijuana (i.e., eight ounces of dried marijuana and six mature or 12 immature plants) to be protected by the safe harbor.

When resolving an ambiguity in a statute, we construe the provision in context and with reference to the entire statutory scheme and are aided by the ostensible objects to be achieved by the legislation, the evils to be remedied, the legislative history, and public policy. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 749.) These additional sources of legislative intent do not point in a single direction, but contain ambiguities. For instance, one of the stated intentions of the Legislature was to enhance the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects. (Stats. 2003, ch. 875, § 1(b)(3).) This statement suggests it might be appropriate to read the MMP in a manner that precludes local restrictions on the cultivation of medical marijuana.

Despite the sweeping nature of some of the declarations of intent relating to the enactment of the MMP, our Supreme Court has determined that, as a statutory scheme, the substantive provisions of the MMP are framed in narrow and modest terms. (*Inland Empire*, *supra*, 56 Cal.4th at p. 753.) The Supreme Court's view of the modest reach of the MMP is one of the factors that guides our resolution of the ambiguity in the statutory text and in the extrinsic materials that aid statutory construction. Another factor is the absence of any indication in the statutory provisions or declarations of legislative intent that local land use regulations were among "the evils to be remedied" by the MMP. (*POET*, *supra*, 218 Cal.App.4th at p. 749.) These factors lead us to the presumption that, absent a clear indication of preemptive intent from the Legislature, local land use regulations are *not* preempted by state statute. (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.) Applying this presumption, we conclude subdivision (a) of section 11362.77 does not clearly indicate the Legislature intended to create a statutory "right" to possess and maintain marijuana in the stated quantities that preempts the authority of local governments to regulate land use. Thus, we conclude subdivision (a) of section 11362.77 can be characterized as creating a *limited* "right" to safe harbor protections from criminal liability or as defining a "requirement" as that word is used in the phrase "requirements of this article" used in section 11362.765, subdivision (a). Under either characterization, subdivision (a) of section 11362.77 does not establish an express statutory right to possess and cultivate medical marijuana that trumps local land use regulation.

### 4. Subdivision (f) of Section 11362.77

Subdivision (f) of section 11362.77 states that specified persons "may possess amounts of marijuana consistent with this article." Contrary to Kirby's position, this language does not create an absolute statutory right to possess medical marijuana. The provision clearly states that such possession must be "consistent with this article"—that is, consistent with the MMP. The MMP has a limited or modest reach and, consistent

28.

with this modest reach, cultivation of medical marijuana is subject to local land use regulations.  In other words, subdivision (f) of section 11362.77 does not create a right to possess marijuana that extends beyond the substantive provisions of the MMP, which (1) provide defenses for specified persons against criminal liability under specified state statutes and (2) prohibit arrests in certain situations.

### 5. *Subdivision (c) of Section 11362.77*

Subdivision (c) of section 11362.77 states that local governments may "enact medical marijuana guidelines allowing qualified patients or primary caregivers to exceed the state limits set forth in subdivision (a)."  Kirby argues the Legislature, by explicitly authorizing only increases in the allowable quantities of medical marijuana, implicitly prevented local governments from decreasing those quantities.

We assume, for purposes of discussion, that subdivision (c) of section 11362.77 contains at least two ambiguities.  First, the term "guidelines" reasonably could be interpreted to include land use regulations.  Second, the express authority to enact a particular type of guideline reasonably could be interpreted to preclude guidelines of a type not expressly authorized.

As earlier, our resolution of these statutory ambiguities is affected by the distinction between the field of criminal law and the field of land use regulations.  The MMP is narrowly drawn and operates primarily in the field of criminal law.  Within that field, the express authority granted by subdivision (c) of section 11362.77 to increase allowable quantities supports the inference that the Legislature intended to prevent local governments from reducing allowable quantities and thereby expanding *criminal liability* for activities involving medical marijuana.  The inference that the Legislature did not intend local governments to expand criminal liability is reasonable because (1) defining crimes and penalties for controlled substances is not an area of law traditionally within the power of local governments and (2) the maxim of statutory construction that to

express or include one thing implies the exclusion of the other. (Black's Law Dict. (9th ed. 2009) p. 661, col. 2 [definition of *expression unius est exclusion alterius*].)

In this appeal, we must determine what inferences about legislative intent are appropriate in the field of land use regulation. It is less plausible to interpret the Legislature's express authorization of local "guidelines" that increase the quantities of marijuana eligible for safe harbor protection from criminal liability to mean that the Legislature intended to restrict the traditional authority of local governments to regulate land use. This inference is less plausible because we must presume the Legislature did not intend to preempt local land use regulations absent a clear indication of such an intent. (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.) There is no clear indication of an intent for subdivision (c) of section 11362.77 to restrain the authority of local government to reduce the number of plants under cultivation or ban cultivation outright as a matter of local land use regulation. Based on the presumption, we interpret subdivision (c) of section 11362.77 to mean that local land use regulations may restrict the personal cultivation of medical marijuana, even if local governments lack the authority to narrow the safe harbor protections for purposes of *criminal liability*.

In summary, we conclude that the provisions of section 11362.77 do not create an express statutory "right" to personally cultivate medical marijuana that is beyond the reach of local land use regulations.[11] Therefore, any such "right" is subject to the authority of local governments to hinder, inconvenience or ban the cultivation of medical marijuana through zoning and land use ordinances.

---

[11] Kirby argues that the nuisance provisions of County's ordinance are invalid pursuant to Civil Code section 3482, which states in full: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." It follows, from our conclusion that there is no express statutory right to cultivate medical marijuana free from the restrictions of local land use regulations, that Civil Code section 3482 does not apply to County's ordinance.

## IV. A RIGHT TO OBTAIN AND USE MEDICAL MARIJUANA

The third ground Kirby asserts for challenging the ordinance's ban on personal cultivation is that it conflicts with California law by impermissibly infringing her right as a disabled person to obtain and use medical marijuana. Kirby argues that "in this case it would be entirely unjustified to extend *Inland Empire*, *Browne*, or *Maral* because it would harm *this disabled Petitioner* (as well as legions or other medical marijuana patients), in a manner this is 'inimical to' the will of the California electorate and Legislature."

Kirby supports this ground by repeating her arguments about "rights" created by the CUA and subdivisions (a) and (f) of section 11362.77 and her argument that the Legislature implicitly forbade localities from enacting regulations that undermine the cultivation quantities established by the MMP. (See § 11362.77, subd. (c).) We have rejected these arguments previously and need not discuss them further.

Kirby also argues that *Maral* is distinguishable because it involved a ban on cultivation by a small city (1.9 square miles, population 8,400) while County's ordinance affects a much greater geographical area, which makes obtaining medical marijuana much more difficult for disabled persons within the jurisdiction. We do not address the differences in area and population as a ground for distinguishing *Maral* because we have not relied on that case in reaching our conclusions about the effect of the CUA and MMP on County's ordinance. We have conducted an independent analysis of the statutory text referenced by Kirby and concluded that the ban on cultivation is not invalid under California's preemption doctrine.

Therefore, the arguments presented by Kirby in the section of her brief arguing she has a right to obtain and use medical marijuana do not convince us to alter our conclusion that local governments may regulate or ban the cultivation of medical marijuana because land use regulations are not preempted by the CUA or the MMP.

V.     LEAVE TO AMEND*

We will not direct the trial court to grant Kirby leave to amend her pleading because Kirby has not carried her burden of showing she could allege facts stating another cause of action.  To be granted leave, a plaintiff must show in what manner she can amend her complaint and how that amendment will change the legal effect of this pleading.  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  This burden is not carried by the assertion of an abstract right to amend.  (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 161, superseded by statute on a different point in *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 637, fn. 8.)

Here, Kirby argued she should be given at least one opportunity to amend her original pleading, but she (1) has identified no additional facts that she could allege and (2) has presented no new legal theory.  Therefore, she has not demonstrated she should be granted leave to amend.

**DISPOSITION**

The judgment or order of dismissal relating to Kirby's complaint is reversed and the superior court is directed to vacate its June 13, 2014, order sustaining the demurrer and to enter a new order overruling the demurrer.  Kirby shall recover her costs on appeal.

_____

FRANSON, J.

WE CONCUR:


_____

HILL, P.J.


_____

PEÑA, J.

_____

\*      See footnote, *ante*, page 1.

32.