Filed 12/15/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| EMILY WHEELER, | B310024 |
| Petitioner, | (Los Angeles County Super. Ct. Nos. 9CJ00315, BR054851) |
| APPELLATE DIVISION OF THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |


Petition for Writ of Mandate.  H. Elizabeth Harris, Commissioner.  Petition denied.

Erika C. Anzoategui, Alternate Public Defender, Reid S. Honjiyo, Brock Hammond and Alvin Yu Deputy Alternate Public Defenders, for Petitioner.

No appearance for Respondent.

Michael N. Feuer, City Attorney, Meredith A. McKittrick, Supervising Deputy City Attorney, and Hannah M. Barker, Deputy City Attorney, for Real Party in Interest.

Michael N. Feuer, City Attorney (Los Angeles), David J. Michaelson, Chief Assistant City Attorney, Taylor C. Wagniere and Kabir Chopra, Deputy City Attorneys, for the Los Angeles Department of Cannabis Regulation as Amicus Curiae on behalf of Real Party in Interest.

Susana Alcala Wood, City Attorney (Sacramento), for City of Sacramento as Amicus Curiae on behalf of Real Party in Interest.

Best Best & Krieger and Jeffrey V. Dunn for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Party in Interest.

_____

Petitioner Emily Wheeler (Wheeler) seeks a writ of mandate directing the appellate division of the Los Angeles County Superior Court to set aside its opinion reversing the trial court's dismissal of her criminal case under Penal Code section 1385, and instead to affirm the dismissal.  Wheeler contends that the trial court did not abuse its discretion in dismissing her case under section 1385.  She also contends that the local ordinances she was charged with violating, Los Angeles Municipal Code (LAMC) sections 104.15(a)1, 104.15(b)4, and 12.21A.1.(a), are preempted by state law and thus unenforceable, providing an alternative basis to uphold the trial court's dismissal of her criminal case.

We hold that the local ordinances are not preempted by state law.  We further hold that the appellate division did not err in concluding that the trial court abused its discretion by dismissing the charges primarily based on Wheeler's lack of knowledge or intent, because the ordinances impose strict liability and do not require proof of knowledge or intent.

2

## FACTUAL AND PROCEDURAL HISTORY

Wheeler and her son are the owners of a commercial storefront building in the City of Los Angeles (the City). They leased the storefront to another person. During the lease term, Omar Brown allegedly was selling cannabis illegally from the Wheelers' property. In June 2019, Wheeler, her son, and Omar Brown were charged with misdemeanor violations of various provisions of the LAMC.[1] The charges relevant to this appeal are that Wheeler leased or rented her building to an unlicensed cannabis business in violation of LAMC section 104.15(a)1 and (b)4, and maintained a building for uses other than permitted in the zone in which it was located in violation of LAMC section 12.21A.1.(a).

Wheeler moved to dismiss the charges, arguing that the LAMC provisions were unconstitutionally vague, and that the charges should be dismissed in furtherance of justice under Penal Code section 1385, because Wheeler was 85 years old, had never been arrested or convicted of any crime, had no connection to the illegal cannabis shop, and was unaware of its presence on her property.

The trial court did not grant Wheeler's motion, but on its own motion dismissed the charges against Wheeler pursuant to Penal Code section 1385, explaining: "You have a woman born in 1934 who has no prior criminal history. There is nothing to suggest that she knows anything about this, other than the fact that she owns the property, and the Code says, 'in the interest of justice;' and I think justice can only be served if a person who has

---

[1] Wheeler's son and Omar Brown are not parties to this writ proceeding.

3

lived an exemplary life for 80 plus years, and finds herself, because she owns property, and that property is leased to another individual, and that individual is operating a dispensary, that says to this court that justice would properly be served by dismissing the case in its entirety against Ms. Emily Wheeler." The court added, "I don't see where justice requires that she be subjected to prosecution on a situation where there's no showing that she even knew anything about it." The People objected that the court was "assuming that knowledge is an element of the offense," to which the court responded, "[n]o, the court is not," and reiterated that the dismissal was "in the interest of justice."

The People appealed the dismissal. Citing *People v. Gonzalez* (2020) 53 Cal.App.5th Supp. 1, 6 (holding that LAMC section 104.15(b)2 does not require proof of mens rea), the appellate division reversed, holding that the trial court's "reliance on [Wheeler]'s lack of knowledge as a mitigating circumstance was improper" given that the ordinances are strict liability offenses. The appellate division further held that the section 1385 dismissal was "an improper dismissal based on the court's disagreement with the law." The error was prejudicial, the appellate division concluded, because it was "reasonably probable" that the trial court might not have dismissed the charges if it had considered only appropriate factors, such as Wheeler's age and lack of previous arrests or convictions.

The appellate division also considered Wheeler's argument, raised for the first time on appeal, that the dismissal should be affirmed because the ordinances were preempted by Health and Safety Code section 11366.5, subdivision (a) which makes it a misdemeanor to *knowingly* lease or rent a building "for the purpose of unlawfully manufacturing, storing, or distributing any

4

controlled substance." The appellate division rejected the preemption argument because state law, and in particular Business and Professions Code section 26200, subdivision (a)(1), "explicitly contemplates that municipalities can implement and enforce their own rules concerning the regulation of the cannabis industry within their borders," the ordinances at issue regulate commercial cannabis activities, and state law does not fully occupy the field.

Wheeler filed a petition for transfer, which our court denied. Wheeler then filed a petition for writ of mandate, which our court also denied. Wheeler then filed a petition for review. The Supreme Court granted the petition and transferred the matter to our court, with directions to vacate the order denying mandate and to issue an order to show cause.

## DISCUSSION

I.    Principles of review

Our court's prior order denying Wheeler's transfer motion was not reviewable. (Cal. Rules of Court, rule 8.500(a)(1); *Dvorin v. Appellate Department* (1975) 15 Cal.3d 648, 650.) However, after unsuccessfully petitioning this court for a writ of mandate, Wheeler filed a petition for review, which the Supreme Court granted, transferring the matter to this court "with directions to vacate [our] order denying mandate and to issue an order directing the respondent Appellate Division of the Superior Court of Los Angeles County to show cause why the relief sought in the petition should not be granted."

Although the procedural route taken by this case is unusual, the matter is properly before us. In *Barajas v. Appellate Division of Superior Court* (2019) 40 Cal.App.5th 944, as in this

5

case, a criminal defendant filed a petition for writ of mandate seeking to challenge the appellate division's order reversing the dismissal of his case, which was denied. The Supreme Court granted review and transferred the matter to the Court of Appeal with directions to vacate the denial and issue an order to show cause. (*Id.* at p. 950.) The court noted that " '[t]he Supreme Court may order review . . . [¶] . . . [¶] [f]or the purpose of transferring the matter to the Court of Appeal for such proceedings as the Supreme Court may order.' (Cal. Rules of Court, rule 8.500(b)(4).) The matter is properly before us on the Supreme Court's order." (*Barajas*, at p. 951; see *Tecklenburg v. Appellate Division* (2009) 169 Cal.App.4th 1402.)

### A. *Forfeiture*

The People contend that the preemption issue is not properly before this court because Wheeler forfeited it by failing to raise it at trial. As the People correctly observe, preemption is a purely legal issue properly raised by demurrer (*Wells Fargo Bank, N.A. v. Superior Court* (2008) 159 Cal.App.4th 381, 385), so Wheeler could have raised it by demurrer below (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1091, fn. 10 ["if a statute under which a defendant is charged . . . is invalid, the complaint is subject to demurrer"]). However, as stated in *People v. Hamilton* (2018) 30 Cal.App.5th 673, 678, footnote 2, when concluding that a claim of federal preemption was not waived by the defendant's failure to raise it below, "The People have cited no authority that would allow us to conclude that a criminal defendant waives the ability to argue on appeal that he has been convicted for engaging in conduct that the state has no authority to punish." (Accord *Molina v. Retail Clerks Unions Etc. Benefit Fund* (1980) 111 Cal.App.3d 872, 878 [since preemption is purely legal issue

6

not involving disputed facts, it may be raised for the first time on appeal].)

Moreover, the preemption issue has now been fully briefed, both by the parties and by amici curiae. Considerations of judicial economy favor addressing the preemption issue on the merits.

II.    State law does not preempt LAMC sections 104.15 and 12.21

A.    *The LAMC provisions at issue*

Section 104.15(a)1 and (b)4 of the LAMC, under which Wheeler was charged with leasing a building to an unlicensed cannabis shop, are part of Ordinance No. 185343, a comprehensive scheme enacted in 2018 by local voter initiative "to regulate commercial cannabis activities in the City of Los Angeles." The purposes of the ordinance are to "create a licensing system for certain cannabis-related businesses," protect consumers from "the dangers inherent in ingesting and using a substance that was not subject to basic rules of safety" and from the "unscrupulous practices" of "unregulated cannabis businesses," and to "issue licenses in an orderly and transparent manner to eligible applicants according to the requirements of this article, . . . and to mitigate the negative impacts brought by unregulated Cannabis businesses." (LAMC § 104.00.)

The ordinance requires all businesses that manufacture, distribute, or sell medicinal and/or adult-use cannabis in the City to have a city-issued license. (LAMC § 104.02.) It requires that the license be "prominently displayed at the Business Premises." (LAMC § 104.11(b).) The City maintains a website listing all businesses that have a license to sell cannabis, including a map

feature allowing the public to search by address to determine whether a business at a particular location has a license.

The ordinance imposes criminal penalties for establishing, operating, or participating in "any unlicensed Commercial Cannabis Activity in the City," which includes "renting, leasing to or otherwise allowing any unlicensed Commercial Cannabis Activity . . . to occupy or use any building or land." (LAMC § 104.15(a)1 & (a)3.) The ordinance also provides that "it is unlawful to[ ] [¶] . . . [¶] . . . [l]ease, rent to, or otherwise allow an Unlawful Establishment to occupy any portion of parcel of land." (LAMC § 104.15(b)4.) "Unlawful Establishment" is defined as a commercial cannabis activity that does not have a city-issued license. (LAMC § 104.01(a)27.) Violations of these provisions are subject to nuisance abatement procedures and to civil penalties of up to $20,000, and are punishable as misdemeanors by a fine of up to $1000 and up to six months in jail. (LAMC § 104.15(c) & (d).)

Wheeler was also charged with a violation of LAMC section 12.21A.1.(a), which provides that "[n]o building or structure shall be . . . used . . . for any use other than is permitted in the zone in which such building . . . is located and then only after applying for and securing all permits and licenses required by all laws and ordinances." Violation of this ordinance is a misdemeanor punishable by a fine of up to $1,000 and up to six months in jail (LAMC § 11.00(m)), and is also subject to nuisance abatement procedures (LAMC § 11.00(l)).

B. *State law regarding commercial cannabis activity*

1. MAUCRSA

In 2017, pursuant to a statewide voter initiative, California enacted the Medicinal and Adult-Use Cannabis Regulation and

8

Safety Act (MAUCRSA), which is codified in Business and Professions Code sections 26000 to 26260.  The stated purpose of MAUCRSA was "to establish a comprehensive system to control and regulate the cultivation, distribution . . . and sale" of medicinal and adult-use cannabis and to set forth "the power and duties of the state agencies responsible for controlling and regulating the commercial . . . cannabis industry."  (Bus. & Prof. Code, § 26000, subds. (b) & (c).)

MAUCRSA creates a state licensing process for cannabis businesses (Bus. & Prof. Code, § 26010 et seq.), including penalties for licensing violations (§§ 26030–26037).  It imposes civil penalties for "unlicensed commercial cannabis activity," and provides that in addition to these civil penalties, "criminal penalties shall continue to apply to an unlicensed person engaging in commercial cannabis activity in violation of this division."  (§ 26038, subds. (a)(1), (f).)

Despite the broad sweep of MAUCRSA, its licensing scheme explicitly contemplates that municipalities may also have their own regulations and licensing requirements for cannabis businesses.  Subdivision (f) of Business and Professions Code section 26030 includes, as a basis for disciplinary action, "Failure to comply with the requirement of a local ordinance regulating commercial cannabis activity."  MAUCRSA includes a provision protecting landlords who rent to cannabis businesses from prosecution, but only if they rent to businesses that comply with state *and local* licensing requirements:  "The actions of a person who, in good faith, allows his or her property to be used by a licensee . . . as permitted pursuant to a state license and, if required by the applicable local ordinances, a local license or permit, are not unlawful under state law."  (Bus. & Prof. Code,

9

§ 26032, subd. (b).) Finally, MAUCRSA provides that "[t]his division shall not be interpreted to supersede or limit the authority of a local jurisdiction to adopt and enforce local ordinances to regulate businesses licensed under this division, including, but not limited to, local zoning and land use requirements, business license requirements, . . . or to completely prohibit the establishment or operation of one or more types of businesses licensed under this division within the local jurisdiction. [¶] . . . This division shall not be interpreted to supersede or limit existing local authority for law enforcement activity, enforcement of local zoning requirements or local ordinances, or enforcement of local license, permit, or other authorization requirements." (Bus. & Prof. Code, § 26200, subd. (a)(1), (2).)

### 2. UCSA

Although MAUCRSA and previously enacted state laws have, to a large extent, legalized the sale of medicinal and adult-use cannabis, state law also continues to define cannabis as a controlled substance. The California Uniform Controlled Substances Act (UCSA) (Health & Saf. Code, § 11000 et seq.) includes cannabis under the category of "hallucinogenic substances." (Health & Saf. Code, §§ 11054, subd. (d)(13), 11018, 11007.)

In particular, Health and Safety Code section 11366.5, subdivision (a) provides that "[a]ny person who has under his or her management or control any building . . . as an owner . . . who knowingly rents, leases, or makes available for use . . . the building . . . for the purpose of unlawfully manufacturing, storing, or distributing any controlled substance for sale or distribution shall be punished by imprisonment . . . for not more

10

than one year." As cannabis is a controlled substance (Health & Saf. Code, § 11054), and engaging in unlicensed commercial cannabis activity is a crime (Bus. & Prof. Code, § 26038, subd. (c)), the state misdemeanor penalty in section 11366.5 would apply to a landlord who *knowingly* leases a building to an unlicensed cannabis shop.

### 3. Nuisance

Finally, the state's general nuisance statute, Penal Code section 373a, could also apply in situations where a landlord allows unlicensed commercial cannabis activity to occur on his or her property. This statute imposes misdemeanor penalties on every "person who maintains, permits, or allows a public nuisance to exist upon his or her property or premises . . . after reasonable notice . . . to remove, discontinue, or abate." (§ 373a.)

### C. *Principles of preemption*

Having surveyed the local ordinances and state statutes at issue, we turn to preemption. Wheeler contends that the ordinances she was charged with violating are invalid because they are preempted by state law. She argues that the state has occupied the field of imposing penalties for drug crimes, and also that the local provisions duplicate and conflict with state law in that the ordinances impose strict-liability penalties for the same conduct that, under state law, requires proof of knowledge (Health & Saf. Code, § 11366.5) or notice and an opportunity to abate (Pen. Code, § 373a).

Article XI, section 7 of the California Constitution states that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." "This inherent local police power

11

includes broad authority to determine, for purposes of the public health, safety, and welfare, the appropriate uses of land within a local jurisdiction's borders." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc*. (2013) 56 Cal.4th 729, 738 (*Inland Empire*).)

"[P]reemption by state law is not lightly presumed." (*Inland Empire*, *supra*, 56 Cal.4th at p. 738.) " 'When local government regulates in an area over which it traditionally has exercised control, such as the location of particular land uses, . . . courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted.' " (*Id.* at p. 743.) Even outside the area of land use, courts are " 'reluctant' " to infer preemptive intent where there are significant local interests that may differ from one locality to another. (*Big Creek Lumber Co. v. City of Santa Cruz* (2006) 38 Cal.4th 1139, 1149.) The presumption against preemption is even stronger in cases involving "home rule" or charter cities such as Los Angeles, which have the right to adopt and enforce ordinances that conflict with general state laws on subjects of municipal rather than statewide concern. (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1075–1076 (*O'Connell*); see Cal. Const., art. XI, § 7.)

In contrast, "local legislation that conflicts with state law is void." (*Inland Empire*, *supra*, 56 Cal.4th at p. 743.) Local legislation has been found to conflict with state law in various ways: if it " ' " ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' " (*Ibid.*)

Local legislation " ' " ' "duplicates" ' " ' " state law when it is " ' "coextensive therewith," ' " regulating or prohibiting exactly the same conduct. (*Inland Empire*, *supra*, 56 Cal.4th at p. 743;

12

*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.) Local legislation "*contradicts*" state law when "it is inimical or cannot be reconciled with state law," such that it is impossible to comply with both. (*O'Connell, supra,* 41 Cal.4th at p. 1068; *Inland Empire,* at p. 743 ["The 'contradictory and inimical' form of preemption does not apply unless the ordinance directly requires what the state statute forbids or prohibits what the state enactment demands"].)

Local legislation " 'enters an area that is "fully occupied" by general law' " either when " 'the Legislature has expressly manifested its intent to "fully occupy" the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate clearly that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality.' " (*Inland Empire, supra,* 56 Cal.4th at p. 743.)

D.    *Case law applying preemption to local cannabis ordinances*

*Inland Empire, supra,* 56 Cal.4th at page 737, held that state statutes regarding medical marijuana do not preempt a local ban on medical marijuana dispensaries. In reaching this conclusion, the Supreme Court analyzed then-existing state laws, the Compassionate Use Act and the Medical Marijuana Program, which were later amended, reorganized, and incorporated into

13

MAUCRSA.  (Assem. Com. on Budget and Fiscal Review, Analysis of Sen. Bill No. 94 (2017–2018 Reg. Sess.)  These laws exempted cultivation of medical marijuana by patients and their caregivers from prosecution under state drug laws.  (*Inland Empire*, at p. 738.)

*Inland Empire*, *supra*, 56 Cal.4th at page 743, concluded that local zoning and nuisance ordinances which, in effect, banned medical marijuana dispensaries in the City of Riverside were not preempted as " ' "duplicative" ' " of state law.  Although the subject matter of the state medical marijuana statutes and the local ordinances overlapped, they were not " 'coextensive.' " The state statutes protected medical marijuana users and their caregivers from prosecution under certain state criminal laws including " 'drug den' " nuisance statutes; the Riverside ordinances, in contrast, defined the use of property for medical marijuana-related activities as a local nuisance, and as a violation of local zoning ordinances.  (*Id.* at pp. 752, 754, 762.) *Inland Empire* also held that the local ordinances did not contradict state law.  It was possible to comply with both the local ordinances and state law, by refraining from cultivating or distributing medical marijuana within the city's boundaries, and the state laws did not require local governments to authorize, allow, or accommodate medical marijuana dispensaries.  (*Id.* at pp. 754–755, 759.)  Finally, *Inland Empire* held there was "no attempt by the Legislature to fully occupy the field of medical marijuana regulation as a matter of statewide concern, or to partially occupy this field under circumstances indicating that further local regulation will not be tolerated," particularly in light of the varying local interests involved.  (*Id.* at p. 755.)  "[W]hile some counties and cities might consider themselves well suited to

14

accommodating medical marijuana dispensaries, conditions in other communities might lead to the reasonable decision that such facilities within their borders . . . would present unacceptable local risks and burdens." (*Id*. at p. 756.)

Other cases have also rejected preemption challenges to local ordinances involving medical marijuana. *Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1543, 1556 to 1557 (*Conejo*), held that state medical marijuana laws did not preempt local ordinances banning medical marijuana dispensaries, noting that the state statutes were amended to clarify that they "expressly permit[ ] 'civil and criminal enforcement' of local ordinances 'that regulate the location, operation, or establishment of a medical marijuana cooperative or collective.' " Similarly, *County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 868 (*Hill)*, held that local nuisance ordinances restricting the location of medical marijuana dispensaries were not preempted by state statutes providing immunity from prosecution under state " 'drug den' " nuisance laws to medical marijuana patients and caregivers. *Hill* concluded that the state laws were not intended to occupy the field of medical marijuana regulation, and the local nuisance ordinances did not duplicate or contradict the state statute providing immunity from state nuisance laws. (*Id*. at pp. 867–869 ["County's constitutional authority to regulate the particular manner and location in which a business may operate [citation] is unaffected by" state law granting immunity from state nuisance statutes]; see *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704 [local ordinance restricting cultivation of medical marijuana not preempted]; *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153 [local ordinance requiring medical

15

marijuana dispensaries to be licensed, and subjecting unlicensed dispensaries to nuisance penalties, not preempted].)

*Inland Empire, Conejo, Hill* and similar cases considered only the state's "careful and limited forays" into decriminalization and regulation of medical marijuana. (*Inland Empire*, *supra*, 56 Cal.4th at p. 762.) In the years since those cases were decided, the state enacted additional legislation, culminating with the enactment of MAUCRSA in 2017, creating a far more comprehensive regulatory scheme that now encompasses both medicinal and recreational adult-use cannabis. (Bus. & Prof. Code, § 26000.) But the same principles articulated in the *Inland Empire* line of cases apply to broader state laws, including MAUCRSA. In *Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029, 1045, the court rejected the notion that, given the enactment in 2015 of more comprehensive state medical marijuana legislation, "regulation of medical marijuana is now a matter of statewide concern, which therefore preempts municipal regulation." The court concluded that regulation of medical marijuana "solely within the City's borders" is still a "wholly municipal matter." (*Ibid*.) Similarly, in *City of Vallejo v. NCORP4, Inc*. (2017) 15 Cal.App.5th 1078, decided shortly after the enactment of MAUCRSA, the court held that a local ordinance treating medical marijuana dispensaries as a public nuisance, but granting limited immunity to dispensaries that met certain requirements, was not preempted. The court noted that MAUCRSA—like its predecessor statutes—does not mandate that local governments authorize, allow, or accommodate the existence of marijuana dispensaries (*id*. at p. 1081), and does not preempt " 'the authority of California cities and counties, under their traditional land use and police powers, to allow, restrict,

16

limit, or entirely exclude' " dispensaries, and to " 'enforce such policies by nuisance actions' " (*id.* at p. 1082).

None of these cases specifically considered whether local ordinances such as LAMC section 104.15, which impose *criminal* penalties for unlawful commercial cannabis activities, in addition to civil penalties such as fines and nuisance abatement injunctions, are subject to a preemption analysis that is less deferential to local government interests. (See *Kirby v. County of Fresno* (2015) 242 Cal.App.4th 940, 957 ["the presumption against preemption that applies to local land use regulations does not apply in the area of criminal law"].)

A preemption challenge to local ordinances imposing criminal penalties for drug-related activity was addressed, however, in *O'Connell*, where the Supreme Court found that a local ordinance allowing seizure and forfeiture of vehicles used to buy controlled substances was preempted by state law. Provisions of the UCSA also provided for forfeiture of vehicles used in drug crimes, but only for more serious offenses and only upon proof beyond a reasonable doubt, while the local ordinance allowed forfeiture even for misdemeanor possession, and upon proof by a preponderance of the evidence. *O'Connell* concluded that the state statute occupied the field of defining and punishing drug-related crimes: "The comprehensive nature of the UCSA in defining drug crimes and specifying penalties (including forfeiture) is so thorough and detailed as to manifest the Legislature's intent to preclude local regulation." (*Id.* at p. 1071.) Given the state's "comprehensive enactment of penalties for crimes involving controlled substances, but exclusion from that scheme of any provision for vehicle forfeiture for simple

17

possessory drug offenses," the local ordinance imposing such a penalty was preempted.  (*Id*. at p. 1072.)

In reaching its conclusion, *O'Connell* relied on *In re Lane* (1962) 58 Cal.2d 99, which held that a local ordinance criminalizing nonmarital sexual intercourse was preempted because the state had occupied the field of sex crimes.  *Lane* is one of a line of cases holding that local ordinances imposing harsher penalties for the same conduct covered by state criminal laws, or criminalizing additional conduct in an area where the state has enacted comprehensive criminal laws, are preempted. (See, e.g., *In re Portnoy* (1942) 21 Cal.2d 237 [local gambling ordinances preempted because they duplicated and conflicted with state law]; *Lancaster v. Municipal Court* (1972) 6 Cal.3d 805, 808 [city ordinance prohibiting massage by person of opposite sex preempted by state's "general scheme for the regulation of the criminal aspects of sexual activity"]; *People v. Nguyen* (2014) 222 Cal.App.4th 1168 [local ordinance prohibiting sex offenders from entering city parks preempted by comprehensive state laws regulating convicted sex offenders].)

The difference between preemption analysis of local land use and licensing ordinances, and preemption analysis of local ordinances that enter the area of criminal law, is illustrated by *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277.  *Cohen* held that state prostitution laws preempted provisions of a local ordinance regulating escort services penalizing " 'criminal conduct' " between escorts and clients (*id*. at p. 292), but did not preempt the local ordinance's provisions requiring licensing of escort services, which fell within the city's power to "regulate businesses conducted within its borders" (*id*. at p. 296). Similarly, *Malish v. City of San Diego* (2000) 84 Cal.App.4th 725,

distinguished between permissible land use and business regulations, and local ordinances that are preempted because they impose harsher penalties than state law for the same conduct.  Local ordinances defining pawnbrokers as a "police regulated" business and requiring permits, inspection, and recordkeeping, were not preempted.  (*Id*. at pp. 729, 730, 732–733, 736.)  But an ordinance allowing revocation of a pawnbroker's permit for a single violation of law was preempted by a state law providing that a state pawnbroker license may only be revoked upon proof of a pattern of unlawful conduct, because it imposed a harsher penalty for the same conduct.  (*Id*. at pp. 734–735.)

This distinction between ordinances that enter into the area of criminal law, and those that regulate local land use and business activities, was applied in the context of medical marijuana in *Kirby v. County of Fresno*, *supra*, 242 Cal.App.4th 940.  *Kirby* involved a preemption challenge to a local ordinance banning medical marijuana dispensaries and cultivation, and classifying violations of the ordinance as both public nuisances and misdemeanors.  (*Id*. at p. 951.)  *Kirby* held that the aspects of the ordinance that regulated land use were not preempted.  (*Id*. at pp. 947–948.)  In contrast, the misdemeanor penalty for medical marijuana cultivation was preempted by "California's extensive statutory scheme addressing crimes, defenses and immunities relating to marijuana" (*id*. at p. 948), which manifested "the Legislature's intent to fully occupy the area of criminalization and decriminalization of activity directly related to marijuana" (*id*. at p. 961).  *Kirby* also held that the local ordinance's imposition of misdemeanor penalties for marijuana cultivation was preempted because it contradicted state law

19

providing immunity from prosecution for marijuana cultivation to persons with a valid medical marijuana card.  (*Ibid*.)

There is not, however, a bright line between the local land use, zoning, and nuisance ordinances restricting commercial cannabis activity—which have generally survived preemption challenges--and local criminal penalties for cannabis-related activity such as the one struck down in *Kirby*.  Section 104.15 of the LAMC is an example of a type of criminal law "often referred to as public welfare offenses."  (*In re Jorge M.* (2000) 23 Cal.4th 866, 872.)  Although these statutes impose criminal penalties, they are " 'regulatory in nature' " and are " ' "enacted for the protection of the public health and safety" ' "; their " ' "primary purpose . . . is regulation rather than punishment or correction," ' " so they are " ' "not crimes in the orthodox sense." ' " (*Ibid*.)

*Conejo*, *supra*, 214 Cal.App.4th at pages 1546 to 1547 arose in the context of a code enforcement investigation rather than a criminal prosecution, but the ordinances at issue were enforceable both by nuisance abatement processes and by prosecution for a misdemeanor, so the case could have involved criminal as well as civil penalties.  Likewise, in *Kirby v. County of Fresno*, *supra*, 242 Cal.App.4th at page 961 while drawing a distinction between local land use ordinances—which were not preempted—and local criminal penalties for marijuana cultivation—which were preempted—the court also noted that the "*indirect* criminal sanction" of a potential misdemeanor prosecution for failing to abate a public nuisance involving the cultivation of medical marijuana was not preempted by state law.

Thus, the central question in this case is whether section 104.15 of the LAMC is a "drug crime" ordinance that would be

preempted by state criminal laws, or a permissible enforcement mechanism for the City's land use ordinances and business licensing requirements for commercial cannabis activities.

E. *Application of preemption principles to LAMC sections 104.15(a)1 and (b)4, and 12.21A.1.(a)*

We begin our preemption analysis of the LAMC ordinances at issue by noting that field preemption does not apply. MAUCRSA explicitly disavows any legislative intention to occupy the field of commercial cannabis regulation, and explicitly contemplates that cities and counties will also impose their own licensing requirements and other restrictions on commercial cannabis activities. (Bus. & Prof. Code, §§ 26030, subd. (f), 26200, subd. (a)(1).) MAUCRSA states explicitly that its provisions "shall not be interpreted to supersede or limit existing *local authority for law enforcement* activity" as well as for "enforcement of local zoning requirements or local ordinances, or enforcement of local license, permit, or other authorization requirements." (Bus. & Prof. Code, § 26200, subd. (a)(2), italics added.)

Nor does the UCSA occupy the field to the exclusion of local ordinances criminalizing cannabis-related activities. Although cannabis is still listed in the UCSA as a controlled substance (Health & Saf. Code, § 11054, subd. (d)(13)), under current law it is primarily regulated by MAUCRSA rather than prohibited by UCSA. Possession of cannabis for personal use by persons over 21 is no longer a crime under state law. (§ 11362.1.) State criminal penalties apply to commercial cannabis-related activities only if they fail to comply with MAUCRSA. (Bus. & Prof. Code, § 26038, subds. (a), (c).)

21

Even though the state has not occupied the field, the ordinances at issue may still be preempted if they duplicate or contradict state law. Wheeler argues that LAMC section 104.15 duplicates and conflicts with section 11366.5 of the Health and Safety Code, in that it penalizes the same conduct—leasing a building to an unlicensed cannabis shop—but the local ordinance imposes strict liability while the state law requires proof of knowledge.

The two provisions, however, are not coextensive. Section 11366.5 of the Health and Safety Code penalizes landlords if they *knowingly* permit any of a wide range of drug-related activities to occur on property located anywhere in the state, including the manufacture, distribution, or sale of any controlled substance. So, for example, landlords who knowingly allow a methamphetamine manufacturing lab, a cocaine-distributing cartel, or a street-level heroin dealer to operate on their property could be prosecuted under this statute. LAMC section 104.15, in contrast, applies only to landlords who allow commercial cannabis activity to occur on their property within the City, without a City-issued license. It is not the presence of a controlled substance that triggers enforcement of this ordinance, but the location of the business within the City and the absence of a license. Nor are the state and local provisions contradictory in the sense of being "inimical." It is possible for landlords to comply with both of them, by refraining from allowing an unlicensed cannabis business to operate on property located in the City.

LAMC section 104.15 and section 11366.5 of the Health and Safety Code are also not duplicative or contradictory in the broader sense discussed in *O'Connell*, *Portnoy*, and similar cases,

22

where local criminal or quasi-criminal ordinances were held to be preempted because they imposed different, broader, or harsher penalties for the same conduct addressed in state criminal laws. Cannabis, unlike other controlled substances such as methamphetamine, cocaine, and heroin, is not unlawful in all contexts. Through successive enactments of state and local legislation, cannabis has gradually come to be regulated in a manner more similar to alcohol, prescription medications, or firearms than to these other controlled substances. There is no such thing as a licensed methamphetamine lab or heroin dealership. Any manufacture, distribution, or commercial activity involving these other controlled substances is necessarily clandestine, so it would violate basic principles of fairness to impose strict liability on a landlord from whom such activity has been successfully concealed. But cannabis shops are businesses, operating openly in public, and so it is not unfair to impose on landlords the responsibility to ensure that they are licensed, especially because cannabis businesses are required to display their licenses prominently, and the City maintains a publicly accessible website listing all licensed cannabis businesses.

Moreover, there are policy justifications supporting LAMC section 104.15's imposition of strict liability, that do not apply in the context of other controlled substances. As explained in the amicus brief of the Los Angeles Department of Cannabis Regulation, there is a large volume of unlicensed commercial cannabis activity that undercuts the City's licensing scheme, and circumvents public health, safety, and environmental regulations. The City may reasonably believe that imposing strict liability on landlords who rent to cannabis shops without confirming that they are licensed is essential to the City's

23

ongoing efforts to combat the negative impact of unlicensed commercial cannabis activity on the health, safety, and welfare of the City's residents.

For similar reasons, LAMC section 12.21A.1(a), and its enforcement through the City's nuisance ordinances, is not preempted by section 373a of the Penal Code, even though the ordinance lacks the explicit notice requirement contained in the state statute. Once again, the state has explicitly disavowed any intention to occupy the field of nuisance abatement. (Gov. Code, § 38771 ["By ordinance the city legislative body may declare what constitutes a nuisance"]; *Inland Empire*, *supra*, 56 Cal.4th at p. 761 ["[n]uisance law is not defined exclusively by what the *state* makes subject to, or exempt from, its own nuisance statutes"; unless there is "clear conflict with general law, a city's or county's inherent, constitutionally recognized power to determine the appropriate use of land within its borders [citation] allows it to define nuisances for local purposes"].)

This ordinance does not duplicate or contradict state law. It falls well within the City's land use powers to enforce its zoning ordinances through criminal as well as civil nuisance penalties, and it is common for such "public welfare offenses" not to require proof of knowledge or intent. (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 872 [" ' "[u]nder many statutes enacted for the protection of the public health and safety . . . criminal sanctions are relied upon even if there is no wrongful intent" ' "].)

We conclude that the appellate division correctly held that LAMC sections 104.15(a)1, 104.15(b)4, and 12.21A.1.(a) are not preempted by state law.

III.   The appellate division did not err in reversing the Penal Code section 1385 dismissal.

Section 1385, subdivision (a) of the Penal Code provides that "[t]he judge . . . may . . . in furtherance of justice, order an action to be dismissed."  The standard for appellate review of a decision to dismiss charges in the furtherance of justice is abuse of discretion.  (*People v. Williams* (1998) 17 Cal.4th 148, 162; *People v. S.M.* (2017) 9 Cal.App.5th 210, 218.)  This standard of review is "deferential.  [Citations.]  But is not empty." (*Williams*, at p. 162 [affirming Court of Appeal's ruling that trial court's Pen. Code, § 1385 dismissal was abuse of discretion].)  Although the trial court's discretion to dismiss pursuant to Penal Code section 1385 is broad, it is " ' "by no means absolute." ' " (*Williams*, at p. 158.)

Because the Legislature did not define the term " ' " 'in furtherance of justice,' " ' " " ' "appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute." ' "  (*People v. Williams*, *supra*, 17 Cal.4th at p. 159.)  *Williams* reviewed the extensive case law on Penal Code section 1385 and concluded that " ' "several general principles emerge.  Paramount among them is the rule 'that the language . . . [citation] "in furtherance of justice," requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People* . . . .' . . . " " . . . in 'the fair prosecution of crimes properly alleged.' " ' "  (*Williams*, at p. 159.)  A trial court abuses its discretion if its Penal Code section 1385 dismissal is " ' "guided solely by a personal antipathy for the effect that the . . . law would have on [a] defendant." ' "  (*Williams*, at p. 159; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 476 ["A court may not

simply substitute its own opinion of what would be a better policy, or a more appropriately calibrated system of punishment, in place of that articulated by the People"].)

In this case, the "interests of society" as expressed in the ordinances at issue are to aid the City in enforcing its commercial cannabis licensing scheme, and to minimize incentives to undercut this scheme by operating unlicensed cannabis businesses, by imposing criminal liability on landlords who rent to cannabis businesses without ascertaining that such businesses are licensed. Given these societal interests, the appellate division did not err in concluding that "[f]inding that a person's lack of knowledge called for the dismissal of offenses, when the offenses required no knowledge for conviction, in effect, was an improper dismissal based on the court's disagreement with the law, or disapproval of the impact the provisions would have on defendant."

## DISPOSITION

The petition for writ of mandate is denied.  Upon remand, the trial court may, upon its own motion, reconsider whether to dismiss the charges in the interests of justice, on the basis of factors other than Wheeler's lack of knowledge.

CERTIFIED FOR PUBLICATION.


MATTHEWS, J.*


We concur:


EDMON, P. J.


EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.